1    LONGYEAR, O'DEA & LAVRA, LLP
     John A. Lavra, CSB No.: 114533
2    Amanda L. McDermott, CSB No.: 253651
     3620 American River Drive, Suite 230
3    Sacramento, CA 95864
     Phone: 916-974-8500
4    Facsimile: 916-974-8510

5    Attorneys for COUNTY OF YOLO,
     DAVID YENNE, and
6    RYAN MEZ

7

8

9                 **UNITED STATES DISTRICT COURT**

10       **EASTERN DISTRICT OF CALIFORNIA SACRAMENTO DIVISION**

11

| | |
|---|---|
| 12   JOSLYNN HAMMERS and DESIRAE HAMMERS, | **Case No.:** |
| 13 | **NOTICE OF FILING COPIES OF** |
|            Plaintiffs, | **PLEADINGS AND ORDERS FILED IN** |
| 14 | **STATE COURT ACTION** |
|            v. | |
| 15 | |
|   COUNTY OF SACRAMENTO, JENNIFER | |
| 16   RAUZY, SEIHDI KLOH, CYNTHIA | |
|    MARSHALL, JENNIFER LAMB, KELSEY | |
| 17   JOHNSON, MARGO POREMBSKI, | |
|    COUNTY OF YOLO, DAVID YENNE, | |
| 18   BONNIE CHRISTEN, RYAN MEZ, and | |
|    DOES 1-15 inclusive, | |
| 19 | |
|            Defendants. | |
| 20 | |

21        COMES NOW DEFENDANTS COUNTY OF YOLO, DAVID YENNE, and RYAN

22   MEZ and hereby file copies of all documents on file in Sacramento County Superior Court, Civil

23   Action No. 34-2015-00181034 as follows:

24        1.        Complaint

25        2.        Summons

26        3.        Civil Case Cover Sheet

27        4.        Notice of Case Management Conference and Order to Appear

28        5.        Request for Dismissal of Defendant Bonnie Christen

1

      6.     Answer to Complaint by Defendants County of Sacramento, Jennifer Rauzy,

2

Seihdi Kloh, Cynthia Marshall, Jennifer Lamb, Kelsey Johnson, and Margi Porembski

3

      7.     Answer to Complaint by Defendants County of Yolo, David Yenne, and Ryan

4

Mez

5

6

Dated: August 25, 2015             LONGYEAR, O'DEA & LAVRA, LLP

7

8

          By:   */s/ John A. Lavra*

             JOHN A. LAVRA

9

             AMANDA L. MCDERMOTT
             Attorneys for County of Yolo, David Yenne, and

10

             Ryan Mez

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  ROBERT R. POWELL, ESQ.   CSB# 159747
   DENNIS R. INGOLS, ESQ.   CSB# 236458
2  BRETT O. TERRY, ESQ.     CSB# 270694
   **LAW OFFICE OF ROBERT R. POWELL**
3  925 West Hedding Street
   San Jose, California 95126
4  T: (408) 553-0201 F: (408) 553-0203
   E: rpowell@rrpassociates.com
5
6  JOSEPH B. WEINBERGER, ESQ. CSB# 136798
   **WEINBERGER LAW FIRM**
7  1839 Iron Point Road #180
   Folsom, California 95630
8  T: (916) 357-6767 F: (916) 357-6766
   E: joe@weinbergerlaw.net
9
10 Attorneys for Plaintiffs

11              SUPERIOR COURT OF THE STATE OF CALIFORNIA

12                        COUNTY OF SACRAMENTO

13 JOSLYNN HAMMERS and DESIRAE              Case No.
   HAMMERS,
14
15            Plaintiffs,
        vs.
16                                          COMPLAINT FOR VIOLATION OF
   COUNTY OF SACRAMENTO, JENNIFER          CIVIL RIGHTS (43 U.S.C. §1983)
17 RAUZY, SEIHDI KLOH, CYNTHIA
   MARSHALL, JENNIFER LAMB, KELSEY
18 JOHNSON, MARGO POREMBSKI,
   COUNTY OF YOLO, DAVID YENNE,
19 BONNIE CHRISTEN, RYAN MEZ, and
   DOES 1-15 inclusive,
20
              Defendants.                   REQUEST FOR JURY TRIAL
21
22                                I.

23 1.   Plaintiffs bring this civil rights lawsuit pursuant to 42 U.S.C. §1983 to redress the

24 deprivation by Defendants, at all times herein acting under color of state law, of rights secured

25 to Plaintiffs under the United States Constitution, including the Fourth and Fourteenth

FILED
Superior Court Of California,
Sacramento
06/26/2015
tsmith
By_____, Deputy
Case Number:
34-2015-00181034

---

Complaint
Hammers v. County of Sacramento, et al.
Case No.

Amendments, and under federal law, including 42 U.S.C. §671(a)(16), and California law where applicable as stated herein.

2.   Venue properly lies in the Superior Court of the State of California, for the County of Sacramento, in that events and circumstances herein alleged occurred in the County of Sacramento, and Plaintiffs and at least one Defendant resides in the County of Sacramento.

## II.

## PARTIES

### Plaintiffs

3.   Plaintiffs JOSLYNN HAMMERS (herein "JOSLYNN") and DESIRAE HAMMERS ("DESIRAE"), were at all times relevant to the facts and circumstances herein individuals residing in the County of Sacramento and sharing an apartment. JOSLYNN and DESIRAE are collectively referred to herein as "Plaintiffs."

4.   JOSLYNN is the lawful mother of Z.H., her first and only child, a minor, born in December of 2012. Z.H. was 19 months old at the time of the events related herein.

5.   In order to protect the child's privacy, it is JOSLYNN's intent to use initials for the designation of the child unless and until such time the Court orders otherwise.

6.   At all times relevant herein, prior to the removal of JOSLYNN's child from her care by Defendants described below, JOSLYNN raised, nurtured, provided guidance, and cared for her child, and enjoyed the company, companionship, and society of her child, and all other benefits and burdens of her rights of familial association with Z.H.

7.   DESIRAE is JOSLYNN's sister-in-law and a plaintiff herein solely on claims related to the entry into her apartment on July 13th, 2014 by members of the Sacramento County Sheriff's Department, as described later in this Complaint.

2

8.   DESIRAE and JOSLYNN resided in the same apartment within the County of

Sacramento.  Together JOSLYNN and DESIRAE shared the costs of rent and miscellaneous

other household expenses during all periods of time relevant to the claims in this Complaint.

**County of Sacramento Defendant (DHHS & Sheriff's Department)**

9.   Defendant COUNTY OF SACRAMENTO (herein "COUNTY") is a municipality in

corporate form, organized and existing under the laws of the State of California, and has as an

administrative subunit thereof the DEPARTMENT OF HEALTH AND HUMAN SERVICES

(herein "DHHS").  DHHS has an administrative and operational subdivision known as Child

Protective Services ("CPS").

10.  COUNTY also has as an administrative law enforcement subunit thereof, the

SACRAMENTO COUNTY SHERIFF'S DEPARTMENT ("SCSD").

11.  All are part of the governmental entity referred to above as COUNTY for all purposes,

though at any time one of the more specific identifying titles ("DHHS," "CPS," or "SCSD")

may be used as appropriate in the context of the allegations contained in this complaint.

Primarily, COUNTY will be referenced.

**County of Sacramento *Monell* Liability**

12.  DHHS, CPS, and SCSD, as COUNTY governmental agency organized subdivisions

existing pursuant to the laws, regulations, and policies of Defendant COUNTY, did together

with COUNTY promulgate, encourage, ratify, condone, and/or permit without remediation,

the policies, patterns, and practices/customs pursuant to which the individual Defendants, and

Does 1 – 15, committed the acts or omissions complained of herein, and of which policies,

practices, customs, and/or procedures, and/or failure to train, whether or not promulgated in

written form, condoned, ratified, and ignored without remediation of any nature the unlawful

3

conduct of the COUNTY employee-defendants named individually as Defendants herein.

13. As the employer of sheriff's deputies, social workers and their supervisors, COUNTY had primary responsibility for the training, education, and supervision of sheriff's deputies, social workers, emergency response workers, supervisors, program managers, dependency intake workers, placement workers, and all other COUNTY, DHHS, and/or CPS, and SCSD personnel.

14. JOSLYNN contends that the policies, practices and procedures of COUNTY aforesaid and as noted herein below, inclusive of the warrantless entry and search of her home, and the removal of minor children in cases where the children are not in imminent risk of serious bodily injury, or before conducting a reasonable investigation and evaluating less intrusive means to ensure a child's safety, constitute a basis for governmental liability in this case pursuant to the *Monell* theory of liability.

15. The unlawfulness and moving force of such policies, procedures, practices/customs is exacerbated by the fact that COUNTY has failed to train at all and/or failed to train employees adequately on state and federal laws statutes implicated in the context of a child abuse/neglect investigation, and therefore JOSLYNN seeks to hold the COUNTY responsible in whole or in part for the conduct of the individual employee-defendants named herein below.

16. JOSLYNN further contends that an additional pattern, practice, or custom of DHHS/CPS and SCSD, for which COUNTY should be held liable for pursuant to Monell, are the 4th Amendment violations by SCSD defendants Does 1 – 15, KLOH, and RAUZY occasioned by the entry into JOSLYNN's home on July 13th, 2014, as described herein below.

//

4

17. JOSLYNN is informed and believes that under the ruse of a "child welfare check" on children in some way involved with DHHS/CPS, such as the child referred to as "T" in the factual allegations below being allowed to remain with JOSLYNN, a CPS social worker (in this case RAUZY) will conduct a "child welfare check," but bring SCSD along because the actual goal of the "child welfare check" is to allow the SCSD officers to then enter and search a home.

18. Nothing in the law, state or federal law, allows law enforcement to enter a home under the aforementioned circumstances, or in any way vitiates the protections of the 4th Amendment, yet this is a routine practice of DHHS/CPS and SCSD.

19. JOSLYNN hereby sues all agencies and departmental units of COUNTY specified hereinabove under the designation of COUNTY herein, and/or interchangeably unless otherwise specified.

**Individual County of Sacramento Defendants**

20. Defendant JENNIFER RAUZY (herein "RAUZY") whose acts as alleged herein were performed in her individual capacity or under color of state law, was at all times material hereto, upon Plaintiffs' information and belief, a case worker and/or emergency response worker employed by COUNTY.

21. Defendant , SEIHDI KLOH (herein "KLOH"), whose acts as alleged herein were performed in her individual capacity or under color of state law, was at all times material hereto, upon Plaintiffs' information and belief, a case worker and/or emergency response worker employed by COUNTY.

22. Defendant CYNTHIA MARSHALL (herein "MARSHALL"), whose acts as alleged herein were performed in her individual capacity or under color of state law, was at all times

material hereto, upon Plaintiffs' information and belief, a case worker and/or emergency response worker employed by COUNTY.

23. Defendant JENNIFER LAMB (herein "LAMB") whose acts as alleged herein were performed in her individual capacity or under color of state law, was at all times material hereto, upon Plaintiffs' information and belief, a case worker and/or emergency response worker employed by COUNTY.

24. Defendant MARGO POREMBSKI (herein "POREMBSKI") whose acts as alleged herein were performed in her individual capacity or under color of state law, was at all times material hereto, upon Plaintiffs' information and belief, a case worker and/or emergency response worker, employed by COUNTY. POREMBSKI was also a "supervisor," or an acting supervisor over LAMB and KLOH at all relevant times.

25. Defendant KELSEY JOHNSON (herein "JOHNSON") whose acts as alleged herein were performed in her individual capacity or under color of state law, was at all times material hereto, upon Plaintiffs' information and belief, an attorney employed by COUNY ("County Counsel") and handling representation of the COUNTY in juvenile dependency proceedings, as well as providing legal counsel to the COUNTY's social workers engaged in the investigation of a referral for the abuse or neglect of a child.

26. Plaintiffs are informed and believe, and thereon allege, that one or more of the individually named Defendant social workers and/or attorneys named above, and/or Does 1 - 15 were decision makers in the making and/or implementation of COUNTY policy with regard to the removal and continued detention of children in the course of an investigation by an employee into allegations of child abuse.

//

6

27.  Alternatively, they were the de facto decision makers on the decision to remove children, such as Z.H., from parents without need of supervisory approval, without a warrant, lacking exigent circumstances, and without consent.

28.  Plaintiffs are informed and believe, and based upon such information and belief, allege that at all times herein mentioned, RAUZY, KLOH, MARSHALL, POREMBSKI, LAMB, and JOHNSON, and/or an unknown number of the individuals identified herein as Does 1-15, were each the agent and/or employee of their co-defendant COUNTY, and/or co-defendants themselves, and each of them was acting within the scope, purpose and authority of their employment, and with the knowledge, permission, support, and consent of each of the individually named co-defendants and/or Does 1-15, and each of them, and/or acting within the scope and purpose of a conspiracy to violate JOSLYNN's 4th & 14th Amendment rights and DESIRAE's 4th Amendment Rights.

**County of Yolo Defendant**

29.  Defendant COUNTY OF YOLO (herein "YOLO") is a municipality in corporate form, organized and existing under the laws of the State of California, and has as an administrative subunit thereof the COUNTY OF YOLO SHERIFF'S DEPARTMENT (herein "SHERIFF'S DEPARTMENT"). All are part of the governmental entity referred to above as YOLO for all purposes, though at any time either designation may be used as appropriate in the context of the allegation in this complaint. Primarily, YOLO will be referenced.

**County of Yolo *Monell* Liability**

30.  YOLO did promulgate, encourage, ratify, condone, and/or permit without remediation, the policies, patterns, and practices/customs pursuant to which the individual Defendants, and Does 11 – 15, committed the acts or omissions complained of herein, and of which policies,

7

practices, customs, and/or procedures, and/or failure to train, whether or not promulgated in written form, condoned, ratified, and ignored without remediation of any nature the unlawful conduct of the YOLO employee-defendants named individually as Defendants herein.

31.  As the employer of the Sheriff, and the Deputy Sheriff's, YOLO had primary responsibility for the training, education, and supervision of the Sheriff, Deputy Sheriff's, and all executive, management, staff, and other employees of SHERIFF'S DEPARTMENT.

32.  JOSLYNN contends that the policies, practices and procedures of YOLO aforesaid and as noted herein below, inclusive of the warrantless removal of minor children in cases where the children are not in imminent risk of serious bodily injury, or before conducting a reasonable investigation and evaluating less intrusive means to ensure a child's safety, constitute a basis for governmental liability in this case pursuant to the *Monell* theory of liability.

33.  The unlawfulness and also moving force of such policies, procedures, practices/customs is exacerbated by the fact that YOLO has failed to train at all and/or failed to train employees adequately, on state and federal laws statutes implicated in the context of a child abuse/neglect investigation, the warrantless removal of children, or allowable conduct in terms of the detention and/or holding in protective custody of individuals pursuant to a Missing Person's Report.

34.  Based on these policies, practice, customs or procedures, and/or the non-existent or inadequate training provided by YOLO to law enforcement officer such as YENNE, CHRISTEN, and MEZ, JOSLYNN seeks to hold YOLO responsible in whole or in part for the conduct of the individual employee-defendants of YOLO named herein.

//

8

Complaint
Hammers v. County of Sacramento, et al.
Case No.

35. YOLO has a long standing practice of cooperating and facilitating the unlawful removal of child/children without a warrant from his/her/their parents, or guardians, based simply on the request of County social workers that they do so; essentially acting as the "muscle" behind the unlawful removal of children.

36. In this case, YENNE, CHRISTEN, and MEZ, knew of the requirement under the law for the need of a warrant supported by probable cause before detaining or holding a child or parent, and inquired expressly of COUNTY dispatch on the night CHRISTEN stopped JOSLYNN along Highway 5, if one existed for the seizure/removal of Z.H.

37. Despite learning there was no such document, no warrant at all for Z.H., YENNE, CHRISTEN, and MEZ simply held JOSLYNN and her child along U.S. Interstate 5 for in excess of three (3) hours, then turned the child over to one or more of the individually named COUNTY employees above, and/or unknown COUNTY employed Doe defendant(s).

38. JOSLYNN hereby sues all agencies and departmental units of YOLO specified hereinabove under the designation of YOLO herein, and/or interchangeably.

**Individual County of Yolo Defendants**

39. Defendant DAVID YENNE (herein "YENNE") whose acts as alleged herein were performed in his individual capacity or under color of state law, was at all times material hereto, upon JOSLYNN's information and belief, a sworn law enforcement officer employed as a Deputy Sheriff of YOLO.

40. Defendant BONNIE CHRISTEN (herein "CHRISTEN") whose acts as alleged herein were performed in his individual capacity or under color of state law, was at all times material hereto, upon JOSLYNN's information and belief, a sworn law enforcement officer employed as a Deputy Sheriff of YOLO.

9

41. Defendant RYAN MEZ (herein "MEZ") whose acts as alleged herein were performed in his individual capacity or under color of state law, was at all times material hereto, upon JOSLYNN's information and belief, a sworn law enforcement officer employed as a Deputy Sheriff of YOLO.

42. JOSLYNN is informed and believe, and based upon such information and belief, allege that at all times herein mentioned, YENNE, CHRISTEN, MEZ, and/or an unknown number of the individuals identified herein as Does 11-15, were each the agent and/or employee of their co-defendant YOLO, and/or co-defendants themselves, and each of them was acting within the scope, purpose and authority of their employment, and with the knowledge, permission, support, and consent of each of the individually named co-defendants and/or Does 11-15, and each of them, and/or acting within the scope and purpose of a conspiracy to violate JOSLYNN's 4th & 14th Amendment rights.

## III.

## FACTUAL ALLEGATIONS

### Background

43. JOSLYNN was blessed with a child, Z.H. in December of 2012. The child's father is Blake Hammers. Until the time of the child's seizure and separation from JOSLYNN early in the morning of July 19th, 2014 (at approximately 3:45 a.m.), mother and child shared all of the companionship, care, and comfort of mother and child. Z.H. was 19 months old at the time of her removal from her mother.

44. Blake and JOSYLNN were married quite young, at age 17 for JOSLYNN, and 16 for Blake. Not long after Z.H. was born, JOSYLNN became dissatisfied with Blake's lack of ambition and commitment to providing for his wife and daughter, and the couple separated

10

approximately one year before the event of Z.H.'s removal from JOSLYNN. By the time of the separation JOSLYNN was also concerned with drinking and likely drug use by Blake.

45. Despite the separation and the issues regarding Blake's choices, JOSLYNN was committed to doing all reasonably within her power to keep Blake a participant in his daughter's life, mindful of the plethora of child development research and publications stressing the importance of both mothers and fathers in a child's life and development.

**The Cynthia & "T" Backstory**

46. JOSLYNN's mother, Cynthia, also had a child – a half-sister to JOSLYNN, who for purposes of this complaint will be referred to herein by the first initial of her first name, "T."

47. In March of 2014, COUNTY received referrals from mandated reporters unknown to JOSLYNN making claims of neglect pertaining to T and a sibling of T's that will be identified as "Z" herein. These complaints/referrals had nothing to do with JOSLYNN or her child, Z.H.

48. JOSLYNN is informed and believes, and thereon alleges, that as early as June 13th of 2014, RAUZY, KLOH, and LAMB, were aware that Cynthia had outstanding warrants for her arrest, and had over forty prior referrals to Child Protection Service agencies, both in the Sacramento area and in the area of Cynthia's prior residence, Tehama County.

49. Social workers KLOH, LAMB, and MARSHALL learned as part of their involvement in placing the child T with JOSLYNN as described below, that in fact JOSLYNN had cared for not only these children (T and Z) for extensive periods of time in the past, but also for three other children of her mother's in the years prior, all for significant periods of time without incident or an allegation of child abuse or neglect against JOSLYNN.

//

11

50. COUNTY began to investigate the allegations upon receipt of the initial referral in March, 2014. However, their first actual contact with at least the children (Cynthia's children) was not until near the end of May, 2014; contact with Cynthia herself did not first occur until June. The children were clean, dressed appropriately, and developing normally for their ages at the May contact. Though a few attempts were made to contact Cynthia, three weeks passed before any COUNTY social worker yet again made contact with even the children. That contact was made June 13th, 2014.

51. KLOH saw the younger child, T, that day, and once again the child appeared to be healthy and happy. KLOH also learned on that day, from two separate sources, one of which was law enforcement, that Cynthia had a warrant out for her arrest.

52. On June 16th, 2014, the COUNTY, social workers Tress Cannon-Davis and LAMB took custody of T and Z from Cynthia's mother. The children were with their grandmother and were not in any imminent risk of serious bodily injury, yet they were taken without a warrant. In fact, the children appeared fine by all outward appearances at the time of their removal.

53. After the removal, one of the other two social workers ended up speaking to Cynthia by phone that same day, and as a result, it was agreed they would meet the following day. They did so, and as a result of that meeting, the social workers placed Z with his father, and put T in the custody of JOSLYNN.

54. During the process of confirming JOSLYNN would be an acceptable placement for T, JOSLYNN told KLOH about her daughter Z.H.'s Hirshsprung's disease. The disease involves nerve damage or incapacity in the lower bowel which interferes with stooling, and can lead to impaction of fecal matter and associated pain and stomach bloating. If untreated, impactions can lead to death.

12

55. It was explained to KLOH that JOSLYNN had, in consultation with Z.H.'s doctor and at her recommendation, been sticking to a regimen of using only breast milk with Z.H., even though she was 14 months old, because the breast milk would keep the stool soft, whereas non-natural formulas and milk would actually harden stools and could lead to impactions and the complications aforementioned.

56. When JOSLYNN met with KLOH that day, she explained she had been a significant part of T's (and her brother Z's) life for many years. JOSLYNN agreed, as did Cynthia, to a plan whereby the children would remain living with her while her mother Cynthia engaged in drug testing and "Informal Supervision" by CPS. That same June 16th day, Cynthia agreed to take a drug test, which she did, and passed it with no illicit substances found in her system.

57. The COUNTY social workers who had been involved in the investigation, which included LAMB, knew the mother Cynthia had passed this drug test well before the events starting on June 24th, 2014 that involve JOSLYNN and removal of her child Z.H., as related herein below.

**June 14th, 2014 Violence By Blake Hammers On Joslynn**

58. On June 14th, 2014, while JOSLYNN was in Tehama County with her sister-in-law DESIRAE visiting friends, she ran into Blake Hammers, Z.H.'s father. JOSLYNN had filed a restraining order against Blake in August of 2013, which had been granted temporarily on an ex-parte basis in Tehama County.

59. However, within the Tehama family court proceeding that followed the filing of the restraining order and the granting of the ex-parte request for same, JOSLYNN is informed and believed that the restraining order was not continued (i.e. made "permanent" for some period of time). Contributing to this belief, family court orders were made September 23rd, 2013,

that authorized visits between Blake and his daughter supervised by JOSLYNN herself.

60.  JOSLYNN explained these events and circumstances to KLOH and LAMB immediately when they later became involved in a claimed "investigation" of the incident to be related shortly. That "investigation" later led to KLOH filing a Missing Persons Report, which led to the warrantless detention and seizure of JOSLYNN, DESIRAE, and Z.H., in a traffic stop on southbound Interstate Highway 5 in Yolo County, just after midnight on July 20th, 2014.

61.  The September 23rd, 2014 family court orders also gave Blake shared but secondary physical custody of the child. Shared physical custodial Orders cannot be made if a family law parent-litigant has been found to have committed domestic violence on the other parent or a child pursuant to Family Code Section 3044, and no court had ever made such a finding as to Blake.

62.  On June 14th, when JOSLYNN ran into Blake, he became insistent on having JOSLYNN and DESIRAE give him a ride back to the Sacramento area where he claimed to have a job.

63.  Though JOSLYNN was very adamant in telling Blake no, he insisted he wouldn't even talk the entire time, and he would just stay in the back seat and play with Z.H. He put his small one-man scooter into the back of JOSLYNN's vehicle, then he jumped in the back seat of her vehicle, and sat with the baby Z.H. At that point JOSLYNN decided to just take him to Sacramento rather than have some ongoing argument with the man. Doing so would also allow him to spend time with his child which was court ordered anyway, and he had not seen the child in approximately one month at that point.

64.  When they arrived at JOSLYNN's home, and Blake was allowed to spend a little more time with his daughter not in a car seat, an argument ensued when JOSLYNN told him it was time for him to get his remaining things out of her car and to go. In the course of that

argument, Blake suddenly put one hand on JOSLYNN's neck while cradling the baby in his other arm, and Blake pushed her by the neck up against the wall where he squeezed her neck momentarily. The sum total of physical injury from the act was a small scratch less than an inch in length on JOSYLNN's neck. JOSLYNN screamed that she was calling 911.

65. Blake then turned and went out of the apartment towards JOSLYNN's vehicle, which still contained some of his personal belongings. On the way to the vehicle, DESIRAE, who had been outside getting the last items of Blake's out of the vehicle to facilitate his leaving – but was unaware of the argument that had ensued in the apartment – asked Blake to hand her the baby, which he did without protest of any kind. He then climbed on his scooter and left.

66. From June 14th, 2014, until JOSLYNN's baby Z.H. was taken from her by YOLO Sheriff Deputies YENNE, CHRISTEN, and MEZ, and thereafter KLOH and LAMB, and/or DOES 12-15, JOSLYNN had not laid eyes on Blake. She advised KLOH, LAMB, RAUZY, and MARSHALL of that in the initial conversation she had with each and every one of them, occurring for each at various dates on and after June 24th, 2014. In fact, from June 14th, 2014, to the day of the filing of this Complaint, JOSLYNN has not laid eyes on Blake Hammers.

67. Though JOSLYNN continued to care for T, there was one point, on or about June 17th, 2014, where Z.H. became ill, and in order to avoid T contracting Z.H.'s illness, JOSLYNN temporarily returned T back to her mother Cynthia. She contacted LAMB and advised her of this situation and advised she would ask that her mother contact LAMB when JOSLYNN saw her mother and ask her to call LAMB and advise of her and T's whereabouts.

## June 26th CPS Starts "Investigation" Of Violence On June 14th

68. On June 26th, 2014, KLOH, while working under acting supervisor LAMB and in consultation with her, received assignment to investigate JOSLYNN and her child based on a

cross-report from local law enforcement about the June 14th, 2014 incident of violence involving Blake Hammers. KLOH went to JOSLYNN's home later that day – without law enforcement – but JOSLYNN was not home.  However, while outside the apartment, KLOH found Blake sleeping on JOSLYNN's back porch.  He denied any allegations of domestic violence to KLOH then said he would go try to locate JOSLYNN. Blake got on a bicycle and said he would be right back, but he did not return.

69.  KLOH learned later that day from a relative named Fred, who is the uncle of Z, that JOSLYNN was in Las Vegas at the time she had been trying to reach her through phone calls and also at the apartment.

70.  On July 3rd, 2014, KLOH tried again to contact JOSLYNN at her home, but there was no response to KLOH's knocking on the door.

### Social Workers And SCSD Conspire To Violate 4th Amendment

71.  On or about July 3rd, 2014, social worker RAUZY contacted KLOH to advise her that she had spoken to a sergeant with the SCSD, who informed RAUZY that SCSD had heard negative things about Cynthia's family and had concerns regarding her children.  Therefore, it was agreed between them that SCSD would "assist the Department" by completing welfare checks on the children.

72.  Thereafter on July 13th, 2014, RAUZY contacted SCSD and invited them to what she characterized as a "child welfare check," but which in reality was a plan to go to JOSLYNN's home and get SCSD into the home because KLOH had received a tip from the apartment building's manager that Cynthia – who still had outstanding warrants – was at JOSLYNN's home.

//

73. Just as planned and determined between KLOH, RAUZY, and SCSD officers Doe's 1 – 5 in advance of arriving at JOSLYNN's home, the SCSD officers immediately after JOSLYNN opened the door, without consent or even asking for consent, entered JOSLYNN's apartment and began searching the apartment. JOSLYNN made no statements indicating consent to enter, made no gestures or movements indicating acquiescence to entry, and in fact, when RAUZY said she was there to do a "welfare check" of the children, JOSLYNN pointed out that she was standing there in front of her with both children present and she could look at them all that she wished. DESIRAE was holding T, and JOSLYNN was holding Z.H. It was after that comment that SCSD personnel simply walked in the door of the home, physically brushing by JOSLYNN and DESIRAE.

74. Though the entire event was unfolding under the guise of a "welfare check" on the children, right when JOSLYNN opened the door she was holding T in her arms, and Z.H. was also right there present in the doorway, visible to RAUZY and the SCSD officers. At no time did RAUZY or any of the SCSD officers ask to look at or attempt to speak to either of the children. The "welfare check" was done, complete, finished, at the front door.

75. After the SCSD Does 6 – 10 entered the apartment and conducted their unlawful search, they found Cynthia in a bedroom and arrested her on the outstanding warrants. However, RAUZY did not remove T or Z.H., and found no reason to do so. The children remained in JOSLYNN's care. RAUZY, who had clearly conducted the "welfare check" solely for the purpose of assisting law enforcement in seeking to have Cynthia arrested, never even entered the home.

76. At no time of any other visit by any of the individually named social worker defendants to the apartment shared by JOSLYNN and DESIRAE – KLOH described her own number of

17

visits as "numerous" - did any of the social worker defendants contact or bring with them any law enforcement officers from SCSD. This is also true of all visits conducted in the COUNTY investigation of Cynthia and her children. Law enforcement was brought by a social worker to "assist" in an investigation, or conduct their own, only on the July 13th, 2014 visit in which Cynthia was arrested.

**After Cynthia's Arrest**

77. On July 14th, 2014, after the arrest of Cynthia on the 13th of July, KLOH came to JOSLYNN's home, but no one was home. She did not then call JOSLYNN, nor did she leave a note or a card indicating she had come to the home or requesting any contact from JOSLYNN. She did not bring law enforcement.

78. On July 15th, 2014, KLOH returned to JOSLYNN's home – again without law enforcement - and was given permission by JOSLYNN to enter.

79. While at the home on the 15th of July, 2014, KLOH observed that the home was clean and orderly and that there was both a toddler and regular bed in the room occupied by JOSLYNN, Z.H., and T. KLOH found sufficient food in the home, noted the utilities were working, and found no hazards in the home. She also noted both T and Z.H. appeared to be doing well, with good hygiene and no bruises or marks, even taking note of how well Z.H. interacted with the adults and her relative T in the home.

80. During KLOH's conversation with JOSLYNN about the incident in the home involving violence by Blake over 30 days prior, she was advised of the event on June 14th from JOSLYNN's perspective, and also advised by JOSLYNN about the fact that the prior ex-parte restraining order she had procured in Tehama County was no longer active and that she was under a court order to allow visits between the father and Z.H. However, JOSLYNN also told

her how, if there were any incidents like what had happened on June 14th, 2014, the court

order allowed her to turn the visits between child and father into supervised visits.

"Supervised visits" refers to visitation between an adult(s) and a child that is supervised by a

county or state recognized and – in some manner – licensed professional visitation supervisor.

81.  JOSLYNN was also very clear with KLOH that she had not seen Blake since June 14th,

and that she would "call the cops" if he were ever to show up again at the home.

82.  Another specific topic of conversation was KLOH's understanding that a document she

had found on the door of JOSLYNN's home was some sort of "eviction notice." JOSLYNN

explained to her that it was not an eviction notice and she was not being "evicted," rather the

note was about people whom she believed to be some local homeless people who had slipped

into the back patio of the apartment and slept there. JOSLYNN had no idea at the time, nor

did KLOH tell her, that in fact Blake had been in her backyard/patio while she was on

vacation in Las Vegas. JOSLYNN did not learn about that until receiving the Detention

Report written and submitted to the juvenile dependency court, and mentioned herein below.

83.  Finally, JOSLYNN very clearly told KLOH that she would not let CPS into her life so

that they can take T simply because her mother is in jail; the law in California is in accord

with that position, as there is no basis for juvenile court jurisdiction / CPS intervention in a

suitable placement of a minor with any person by an incarcerated parent.

84.  For reasons unknown to JOSLYNN, LAMB then came to her home again later on July

15th, 2014 – also without law enforcement - after KLOH had come and gone.  However,

JOSLYNN was not home.

85.  Despite the clean home and the lack of any evidence of injury or harm to T or Z.H. in

JOSLYNN's care, KLOH returned to the CPS offices, and in consultation with LAMB,

19

PROMBESKI, and MARSHALL, it was decided and agreed that T would be taken from JOSLYNN without a warrant.

86. Late on July 15th, 2014, KLOH spoke with JOSLYNN on the phone and asked her to arrange a time when she could come visit T again. At no time prior to the removal of Z.H. from her mother's care, as described hereinafter, did KLOH or any other social worker tell JOSLYNN that they were intending to take custody of T, only saying they needed to "see" the child. During the phone call, KLOH merely stated that there was an "investigation" that was being conducted and that she must make contact with T "immediately."

87. JOSLYNN agreed to make T available for KLOH to see her at her apartment the next day at 1:30 p.m., advising KLOH that it was important she be there on time because JOSLYNN had a lot of errands and running around to do that day. JOSLYNN did not at any time in the conversation say that she would call KLOH at 1:30 when she was home. She simply said that she would meet her at her home at 1:30 p.m., which KLOH stated was fine.

88. On July 16th, 2014 at 1:30 p.m., JOSLYNN was at her apartment – KLOH did not call in advance or show up on time. JOSLYNN called KLOH at 1:45 p.m. advising her that she could not wait any longer and was leaving. She offered to reschedule such a meeting but KLOH refused, insisting repeatedly that she needed to see T right then and JOSLYNN should wait. JOSLYNN explained she had things she had to do and she could not meet at that time. KLOH refused to reschedule and hung up on JOSLYNN.

89. KLOH then went out to JOSLYNN's home despite their conversation, and did not find anyone home.

90. Later that same day, July 16th, 2014, JOSLYNN contacted MARSHALL and told her she would transport T to the same Fred who is the uncle of Z, and the man with whom Z was

20

placed. JOSLYNN also told her that if they were going to take the child into protective custody, they could do it from the relative Fred's home. MARSHALL told JOSLYNN that would be fine.

91. LAMB was made aware of the conversation between JOSLYNN and MARSHALL, and as a result she called Fred that day. Her call was not made in an effort to confirm whether JOSLYNN had advised him of her intent to bring T to him, but solely to inquire if Fred had any information on JOSLYNN's whereabouts. LAMB was too eager to seize custody of T to wait until JOSLYNN had dropped the child off to Fred.

**Kloh Consults Kelsey & Lamb – Issues Missing Persons Report**

92. On or about July 17th, 2014, LAMB, KLOH, and MARSHALL met with JOHNSON and expressed their anger about their perception that JOSLYNN was not cooperating with their efforts to remove T from her care. As a result of the meeting, based on the directions and agreement of JOHNSON, the participants made a plan whereby KLOH would file a "Missing Person's Report" with the SCSD claiming that JOSLYNN, her child Z.H., T, and her mother Cynthia, were all "missing persons."

93. It was agreed by LAMB, KLOH, MARSHALL, and JOHNSON to state in the Missing Person's Report that the children – both T and Z.H. – should be taken into protective custody, despite the fact LAMB, KLOH, MARSHALL, and JOHNSON knew that they had not obtained a warrant for the seizure of Z.H., and they had in fact not yet even obtained a warrant for the seizure of T.

94. This inclusion of the command to take the children into protective custody was made despite the fact that KLOH had just been at JOSLYNN's home on July 15th, 2014, and described the home as clean, free of any hazards, with working utilities and plenty of food,

and described the children (both T and Z.H.) as children who were, "doing well with good hygiene and no bruises or marks on them." Suddenly, after LAMB, KLOH, and MARSHALL, consulted with JOHNSON, the Defendants had decided to remove Z.H. by whatever means were available to them, lawful or not.

95. KLOH included the requirement that both children (T and Z.H.) be taken into custody if found by law enforcement in the Missing Person's Report referral when she made it. In doing so, any law enforcement officer that may have encountered JOSLYNN, her mother Cynthia, or the children, or any dispatcher assisting a law enforcement officer in the field, when pulling up the Missing Person's Report would see that they were to take the children into protective custody.

96. However, none of these individuals (JOSLYNN, Z.H., T or Cynthia) were "missing persons" under the definitions set forth in the regulatory directives and definitions pertaining to filing Missing Person Reports in California.

97. Nor were the individuals the named Defendants listed in the Missing Person's Report within the definition of any "missing persons" pursuant to the published Peace Officer Standards & Training that inform law enforcement on the rules and practices of making, taking, and distributing Missing Person Reports.

98. None of the four aforementioned individuals, including specifically JOSLYNN and her child Z.H., were "at risk" pursuant to the P.C. 14213(b) definition of the term governing Missing Person Report categories that may include an "at risk" requirement.

99. Despite the fact none of the four fell into any recognized Missing Person category, and none of the individually named Defendant's in this action had a warrant allowing taking Z.H. into protective custody, per the agreement with JOHNSON, LAMB, and MARSHALL,

22

KLOH made her Missing Persons Report to an unknown SCSD employee and it was promulgated on a state wide law enforcement database accessible by any law enforcement officer in the State of California.

100. It is unknown what Doe Defendant, presumably a COUNTY employee, would have inserted instructions from KLOH into the Missing Persons Report that any person or persons should be taken into "protective custody" without verification or even representation as to the existence of a warrant, and PLAINTIFF's will seek leave to amend this Complaint to name such Doe(s) when ascertained.

101. The Missing Persons Report information that law enforcement could access, which Deputy YENNE or MEZ eventually did on July 19th, 2014, after stopping JOSLYNN on Interstate 5, did not indicate that there was any kind of lawful court order for taking any of the four individuals into custody. It simply directed that the children be taken into protective custody.

**Joslynn Stopped By Yolo County On Highway 5 – July 19, 2014**

102. On July 17th, 2014, Cynthia was released from jail, where she had been residing since her arrest at JOSLYNN's home on July 13th, 2014, described above. JOSLYNN then returned T to her mother, and she and DESIRAE went up to Red Bluff to visit family and friends and to pick up an aunt (Sarah Simmons) of JOSLYNN's who was going to return with them to JOSLYNN and DESIRAE's home in Sacramento to visit for a while. On the night of July 18th, 2014, they got back on the road together, JOSLYNN, DESIRAE, Z.H., and JOSLYNN's aunt, to return to Sacramento.

103. When they were driving south on Interstate Highway 5, and were in the area of the O'Dunnigan Rest Stop, JOSLYNN was pulled over by CHRISTEN, ostensibly for exceeding

the speed limit. The initial stop occurred at approximately 12:30 a.m. on July 19th, 2014. CHRISTEN was joined shortly after the stop by YENNE and MEZ. Plaintiffs are informed and believe that YENNE was a sergeant with YOLO and was at all times the lead officer on the scene of the traffic stop and ensuing detention and taking of Z.H. into custody that morning. Plaintiffs are also informed and believe, and thereon allege, that all actions of the three YOLO sheriffs taken that evening/early morning, were discussed and agreed upon between the three, and possibly other unknown Doe Defendants.

104. YENNE, CHRISTEN, and MEZ were all well aware of the need for a warrant or other judicially authorized justification for the continued detention of JOSLYNN and the others, and/or a court order to take a child into protective custody or to continue to detain them for purposes of handing the child Z.H. over to CPS.

105. After all three YOLO Defendants discussed amongst themselves the issue of needing some form of judicial authorization, YENNE specifically endeavored to determine through phone contacts with the SCSD (dispatch) and phone conversations with an unknown COUNTY/CPS representative (Doe 11) whether or not there was in fact an affidavit of probable cause, a warrant, or any other judicially generated orders authorizing the sheriffs to detain or take custody of the child. They also knew almost immediately after the initial vehicle stop and having the opportunity to see Z.H., that she was not T, and that in fact JOSLYNN did not have T with her.

106. In the course of those discussions with SCSD and Doe 11, YENNE learned that indeed there was no court order, warrant, or other judicially generated authority to detain JOSLYNN or any of the others, including Z.H. Despite clearly learning of the lack of any appropriate legal process for his subsequent actions, YENNE asked what Doe 11 wanted him to do,

asking expressly if Doe 11wanted he and his Sheriffs on scene to hold Z.H. until they

(CPS) could simply drive out and pick up the child.

107. Doe 11, who was also well aware there was no protective custody warrant or other

judicial authorization for the taking Z.H. into protective custody of Z.H., told YENNE to do

just that. That is what YENNE, CHRISTEN, and MEZ did.

108. YENNE, CHRISTEN, and MEZ held all of the occupants of JOSLYNN's vehicle on the

side of Interstate Highway 5 for approximately three (3) hours until unknown CPS "transport"

worker(s) (Does 12-14) came out to the Highway 5 location and took custody of Z.H.

109. Prior to actually taking Z.H. from the scene of the traffic stop, approximately 40 minutes

after the initial stop, CHRISTEN, MEZ, and YENNE placed JOSLYNN in their patrol car and

would not let her stay with Z.H. in her car, despite the fact her child was crying and

frightened. JOSLYNN was separated from Z.H. under those circumstances for approximately

three (3) hours, and was forced to watch her crying and screaming child being taken by CPS,

from the back seat of a YOLO sheriff's vehicle.

110. JOSLYNN was not charged with any crime or Vehicle Code violation that evening, but

her child was taken from her. At the time Z.H. was detained by YOLO and the individually

named Sheriff's deputies aforesaid, up to and including the point where COUNTY/CPS took

custody of the child on Interstate Highway 5, Z.H. was not in imminent risk of any injury,

consent was not given for her removal, and more than sufficient time was present for

obtaining, or at least seeking to obtain, a protective custody warrant.

**Investigatory Meeting With Lamb**

111. Shortly after the removal of Z.H. (on Monday, July 21st, 2014), JOSLYNN was

contacted by LAMB, who asked her to come down to the CPS offices and participate in an

Complaint
Hammers v. County of Sacramento, et al.
Case No.

interview about the CPS investigation, and by this time, removal of Z.H. JOSLYNN went to the meeting, accompanied by her sister-in-law DESIRAE.

112. During the meeting, LAMB made it very clear that the reason Z.H. was taken from her, was because, in their opinion, JOSLYNN had not cooperated to their satisfaction in returning T to them when they wanted her to the week prior.

113. LAMB expressly told JOSLYNN that, *"None of this had to happen. If you would have brought [T], none of this would have happened because we could have investigated your stuff."* However, LAMB was well aware that KLOH had already gone to JOSLYNN's home and conducted an investigation of the June 14th, 2014 incident involving Blake's violence, as KLOH had fully informed her of the results of her investigation. The information was also memorialized in the CWS/CMS, which is an electronic database into which social workers in California that are investigating or working a "case" input notes about the work they have done in an investigation or handling of a real or potential juvenile dependency matter.

114. Defendants LAMB, KLOH, JOHNSON, MARSHAL, simply retaliated against JOSLYNN by taking her child as punishment for her failing to give them T, a child whom they had no authority or jurisdiction over whatsoever until after the child had already been returned to her mother Cynthia's care; KLOH had not obtained a warrant to take T into protective custody until late in the day on the 17th of July, 2014. She had never even applied for a warrant to take Z.H. from her mother.

115. During the meeting, at which the 22 year old JOSLYNN was not represented by an attorney, LAMB also proceeded to coerce JOSLYNN to submit to a mental health assessment, in violation of JOSLYNN's 1st Amendment rights of privacy.

//

116. At no time did LAMB advise JOSLYNN that she could refuse to have such an assessment, though telling her that she could not "force" her to. Instead, LAMB cast her "request" in terms of invading JOSLYNN's mental health privacy rights as simply a routine part of the process of "investigation" she was doing, and it would be relevant information for the court, saying, among other things in her efforts to obtain JOSLYNN's consent,

- "What I'm saying is I want to rule out drug issues, mental health issues. I just want to rule those things out so we don't have to deal with those things. OK."

- "I have the counselor here and she'll just come down and do it today so we'll get it over with and then that way we can just let the Court know we've done it."

117. Despite JOSLYNN expressly telling LAMB that she didn't feel she needed a mental health assessment and did not want one, and despite JOSLYNN having told LAMB of her emotionally devastated state, so severe she described herself as doing nothing but crying for the prior two days, LAMB brought down a supposed mental health professional of some kind who then performed a Mental Health Assessment on JOSLYNN.

118. LAMB also directed JOSLYNN to take a urinalysis drug test. LAMB did not at any time inform JOSLYNN of her right to refuse such a test, despite LAMB being fully aware that she nor any other social worker could require JOSLYNN to take a drug test prior to such time as the juvenile dependency court takes legal custody, care, and control of a minor from both parents.

119. Also occurring during the meeting with LAMB, was JOSLYNN providing LAMB with letters from the apartment complex's onsite maintenance man, the landlord, and a friend, all of which reflected the fact that Blake had not been seen in or around JOSLYNN's apartment for a very long time. LAMB made copies of these letters for her files.

27

### Juvenile Court – Lies Under Penalty Of Perjury

120. Thereafter, on July 23rd, 2014, POREMBSKI filed a Welfare & Institutions Code Section (W&IC) 300 Petition, under penalty of perjury in the County of Sacramento Superior Court Juvenile Dependency Division, which contained completely false statements, half-truths and misrepresentations, and which omitted exculpatory information. JOSLYNN alleges that POMBRESKI and LAMB worked together in crafting the Petition, and the Detention Report to be discussed next, and submitted these documents to the court intending to further violate JOSLYNN's 14th Amendment rights of familial association with Z.H.

121. At or about the same time, and also intended for presentation to the juvenile dependency court judge that would hear the initial Detention Hearing, LAMB submitted a Detention Report. The Detention Report was signed by LAMB and also signed by POREMBSKI, who was LAMB's supervisor.

122. JOSLYNN is informed and believes, and thereon alleges, that POREMBSKI had not personally performed any investigation of any of the facts of the case involving JOSLYNN and her child Z.H. Yet she swore out the Petition pursuant to W&IC 300, under penalty of perjury, all based on "facts" as she had learned them from LAMB.

123. POREMBSKI had reviewed, edited, and approved the Detention Report, and/or not reviewed it at all, either with reckless disregard for determining the truth or falsity of various of the allegations, or knowingly signing a document containing deliberate falsehoods and misrepresentations, the nature of which POREMBSKI was fully aware. LAMB was personally aware of all of the false statements, misrepresentations, and failure to include exculpatory evidence which were contained in both the Petition and the Detention Report.

//

Complaint
Hammers v. County of Sacramento, et al.
Case No.

124. LAMB and POREMBSKI were well aware the juvenile dependency court would be receiving the Petition, sworn to under penalty of perjury at the Detention Hearing, and taking the Detention Report into evidence at the hearing, as it was statutorily required to do so.

125. In the Petition POMBRESKI filed, she made the false representations with knowledge of their falsity and/or reckless disregard for their truth or falsity, and knowingly included half-truths and misrepresentations and omitted exculpatory information, all in an effort to ensure the juvenile court would sustain the Petition in the original Detention Hearing to be held July 24th, 2014, and agree to her and/or CPS's recommendations to continue to detain Z.H. out of her mother's care.

126. LAMB and POMBRESKI were well aware that all that was necessary to meet the "prima facie" legal standard for a juvenile court to sustain an original W&IC 300 Petition, and thereupon continue the separation of the parent(s) and child, was to state enough facts which - when all deemed "true" as required by the law at such a hearing - the child Z.H. would be fairly described as a child coming within the description of an abused or neglected child as defined in W&IC 300(b), and the COUNTY would assume care, custody, and control of the child.

127. In this matter, POMBRESKI and LAMB were making their claims for continued separation of JOSLYNN from her child under a "b" Petition (W&IC 300(b)), which alleged Z.H. "suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness as a result of the failure or inability of his or her parent or legal guardian to supervise or protect the child adequately [and/or] by the inability of the parent or legal guardian to provide regular care for the child due to the parent's or legal guardian's mental illness, developmental disability, or substance abuse."

29

128. As her expressed factual basis that would make Z.H. fit into that general statutory description, and to support COUNTY and POMBRESKI and LAMB's recommendation to the juvenile dependency court of keeping custody of Z.H. from her mother, POMBRESKI put in the Petition:

1.) "[M]other has an active restraining order [against Blake Hammers] in that (*sic*) was granted on or about dated September 23, 2013 and expires September 23, 2016.

2.) The mother has failed to take reasonable steps to protect the child and herself as she does not enforce the restraining[;] continues to maintain contact with the father, and the mother allowing (*sic*) allows him daily two hours supervised visits with the child on a daily basis[.]

3.) [A]nd she has failed to modify the visitation order.

4.) The on-going domestic violence in the home places the child at substantial risk of physical harm, abuse and/or neglect.

129. The statement identified as #1 is false, completely false. JOSLYNN did not have to her knowledge an active restraining order three years in length.

130. The statement identified as #2 is false, completely false. During the meeting with LAMB on July 21st, 2014, JOSLYNN expressly advised LAMB, as she had KLOH when KLOH visited her home on July 15th, 2014, that she has not seen Blake since the violence occurring on June 14th, 2014. LAMB had been provided with the three letters about Blake's non-presence at JOSLYNN's residence or apartment complex mentioned previously as well.

131. LAMB and KLOH had also previously been advised by JOSYLNN that even when Blake did see his child, it was very rarely, and for months had coincided solely with when JOSLYNN would occasionally travel to Red Bluff.

---

30

Complaint
Hammers v. County of Sacramento, et al.
Case No.

132. LAMB was also advised that the one time Blake had come to her door and knocked on it since the June 14th, 2014 incident, JOSLYNN immediately called the police.

133. The statement identified as #3 is a misrepresentation, a half-truth, of which its misrepresenting nature LAMB was fully aware. During the meeting with LAMB, JOSLYNN had shown her the actual order that governed the parents' custody/visitation with Z.H. from Tehama County. JOSLYNN had expressly shown LAMB the language in that existing order, which required no modification whatsoever, because it already specified that if for any reason mother JOSLYNN did not want to proceed with supervising visitation between Blake and her daughter, Blake would have to move to supervised visitation.

134. The statement identified as #4 is false, as there was no "ongoing domestic violence" in JOSLYNN's home, which LAMB had been fully apprised of two days prior to her July 23rd, 2014 submission of the Petition to the juvenile court. LAMB had also been advised in her meeting with JOSLYNN that JOSLYNN had left Blake a year prior and they had not lived together since.

135. The remainder of the Petition was about Blake, and while it may or may not have been true what LAMB alleged as to Blake and his issues, Blake's status as a person whereabouts unknown, would have no legal relevance on the return of Z.H. to JOSLYNN by a juvenile court following California law at the Detention Hearing. Defendants were attempting to portray the situation as one in which Z.H. was without adequate support from her young single mother; another false, albeit implicit representation in the Petition and Detention Report.

136. The Detention Report of course, contained its own false statements, misrepresentations, and omissions of relevant exculpatory information. These include, but are not limited to:

1.) Telling the court that JOSLYNN "has a restraining order" from the Tehama court, yet she was allowing "regular contact" with the child and herself.  Never once does the Report include the fact of the Tehama County Order that Joslynn had shown to KLOH and LAMB, and provided a copy of to LAMB during the July 21st, 2014 meeting.  KLOH actually acknowledged the order, referring to it as an "Interim Order" of September 23rd, 2014, but did not attach it to the Detention Report.  Nor does the report acknowledge that there was nothing remotely approaching "regular contact" between Z.H. and Blake, in fact, quite the opposite; "irregular," "happenstance," "circumstances prevailing," contact may have been an appropriate characterization, not "regular contact."

2.) KLOH also did not attach the letters that JOSLYNN provided at the July 21st meeting, all indicating that Blake had not been present at her apartment to the knowledge of the apartment maintenance man, landlord, or friend of JOSLYNN's.  Thus, exculpatory information which contradicted LAMB and KLOH's effort to retain custody of Z.H. and further the punishment of JOSLYNN for not cooperating with them was withheld from the Court.

3.) Despite KLOH having gone to JOSLYNN's home and conducted a lengthy interview with JOSLYNN on July 15th, 2014, KLOH deliberately lied in the Detention Report by leaving out any mention of having met with JOSLYNN on that day, attempting to paint JOSLYNN as avoiding contact with her.  The  pupose of this portrayal, was to seek to influence a conclusion that JOSLYNN was a "flight risk," for that is one of the statutory exceptions to a court returning a child at the Detention Hearing pursuant to W&IC 319 which governs such hearings.  LAMB and KLOH knew this, their mischaracterization was intentional.

Complaint
Hammers v. County of Sacramento, et al.
Case No.

4.) KLOH went on to report that she had spoken to a relative of JOSLYNN's (Fred) on July 16th, and the relative had no information on where JOSLYNN or Cynthia were, however, having not advised the court she had personally interviewed JOSLYNN on July 15th, this was said to the court solely to bolster the scenario KLOH was attempting to portray of JOSLYNN avoiding contact with KLOH and being a "flight risk."

5.) KLOH told the court in the Detention Report that when meeting with LAMB on the 21st of July, JOSLYNN had said, "I am going to college and want to be a nurse, I have too much going for me. I am not going to ruin what I have worked so hard for, and my child is everything to me." Though not an untrue sentiment of JOSLYNN's, the statement, which KLOH put in quotes, was never said by JOSLYNN.

137. Nowhere in the Detention Report does KLOH advise that JOSLYNN called the police the one time Blake did show up at her residence after the June 14th, 2014 incident.

138. Nowhere in the Detention Report does KLOH tell the court that the reason that Z.H. had been taken from her mother was that KLOH had included instructions in the Missing Persons Report she had filed with SCSD that the child be taken into protective custody.

139. Nowhere in the Detention Report does KLOH advise the court that the existing September 23rd, 2014 order from Tehama County had its own "self-executing" provision – wherein JOSLYNN on her own could execute, and told LAMB she would execute –whereby if JOSLYNN no longer wished to supervise visits between Blake and Z.H. he would go into supervised visitation. No "modification" of any order was necessary.

**Juvenile Proceedings Begin**

140. The first hearing in the juvenile matter was held July 24th, 2014.  As planned by LAMB, KLOH, MARSHALL, and PROMBESKI, the juvenile dependency court took the submission

33

Complaint
Hammers v. County of Sacramento, et al.
Case No.

of the Petition allegations as true ("prima facie"), and took the Detention Report into "evidence."

141. Not surprisingly, based on the false statements, misrepresentations and omitted exculpatory information in both the Petition and the Detention Report, the juvenile dependency court followed the COUNTY / KLOH's recommendation, which recommendation was made upon agreement of LAMB, MARSHALL, and PROMBESKI, to detain Z.H. after the hearing in the care, custody and control of COUNTY. Z.H. remained in the care, custody, and control of the COUNT until the completion of both Jurisdiction and Disposition trials as a result of the deceit contained in these documents, until September 4th, 2014.

**Medical Appointments And Treatments Of Z.H. Without Notice**

142. During the period of time that COUNTY had care, custody, and control of Z.H., they were required under state and federal law to give advance notice to JOSLYNN of – and the opportunity to attend - any medical appointments, treatments, or procedures that may occur, or be considered necessary for Z.H., before Z.H. actually attends or undergoes such treatments or procedures.

143. Despite knowledge of these laws, and despite being apprised of these obligations in court during the initial proceedings in court, despite the court not making any orders curtailing or limiting in fashion JOSLYNN's right to make medical decisions pertaining to her daughter, during the time Z.H. was in the care, custody and control of COUNTY, unknown Doe defendants made and took Z.H. to medical appointments, and Z.H. undertook treatments and medical procedures, on one or more occasions, for each of which no advance notice was given to JOSLYNN at all.

144. JOSLYNN does not know as of the filing of this Complaint, which person or persons made or took Z.H. to medical appointments, or subjected her to medical treatments or procedures, and reserves herein the right to amend this Complaint when the true identities of any such person or persons are known.

## IV.

## DAMAGES

145. As a result of the conduct of Defendants, Plaintiffs suffered severe emotional distress, anxiety and general damage to their psyche, to such an extent as to cause physical manifestations of pain and symptoms of nausea and severe depression, including but not limited to sleep disturbance, headaches, fatigue, malaise, irritability, inability to focus, a generalized fear of authority figures such as law enforcement officers and social workers, loss of appetite and loss of weight.

146. The incident also caused humiliation and embarrassment and loss of reputation in the community to Plaintiffs, and caused JOSLYNN the incursion of attorney fees and related costs and expenses, medical fees, therapy fees, and expenses related thereto, and is likely to cause the incursion of further medical, therapy, and/or counseling fees in the future as well as expenses related thereto.

147. JOSLYNN is informed and believe, and thereupon alleges, that she was placed on various state and local database registries and systems for identifying to social workers, law enforcement, and others, alleged perpetrators of child abuse, which database registries and systems specifically, but not by way of limitation, include the Child Welfare System/Case Management Service, and/or the Child Abuse Central Index maintained by the California Department of Justice, with such placement further damaging her reputation and likely

35

Complaint
Hammers v. County of Sacramento, et al.
Case No.

causing damages in the future in her rights of membership, society, community participation,

participation in various leagues and associations of which her daughter Z.H. may someday

seek to participate, as well as participation in various school related activities normally

enjoyed by parents of children which have not been placed on such database registries or

systems.

148. Plaintiffs seek an award of exemplary (punitive) damages under federal law and pursuant

to California Civil Code §3294 to make an example of and punish Defendants for their

conduct in this matter, and in the hope of deterring future conduct of a similar nature in the

future.

## V.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### VIOLATION OF THE 14TH AMENDMENT – FAMILIAL ASSOCIATION
(Joslynn v. Yenne, Christen, Mez, Lamb, Kloh, Marshall, Johnson, Doe 1)

149. Plaintiff JOSLYNN re-alleges and incorporates paragraphs 1-144, inclusive, as though

fully set forth at this point, as they relate to a claim for relief for a violation of her rights of

familial association with her daughter Z.H. under the 14th Amendments to the United States

Constitution, as occasioned by the unlawful warrantless removal of Z.H. from the care,

custody, and control of her mother JOSLYNN.

150. This Cause of Action is made against the following individually named Defendants,

YENNE, CHRISTINE, MEZ, LAMB, KLOH, MARSHALL, and JOHNSON.  JOSLYNN

believes there may have been other COUNTY employees involved, and will request leave to

amend this Complaint to name such individuals as Defendants if ascertained.

151. This Cause of Action is also made against YOLO and COUNTY based on their policies,

36

practices, customs, and procedures - particularly as to the use/misuse of the Missing Persons Reporting system - constituting a moving force behind the removal of Z.H. by way of including a "take into protective custody" instruction placed in a Missing Persons Report, and/or, lack of training on who constitutes a Missing Person, or the limits of law enforcement action based on such instructions within a Missing Person Report.

152. JOSLYNN alleges each individually named Defendant was an integral participant in the events, circumstances, and decisions that led to the unlawful seizure of Z.H.

153. JOSLYNN hereby incorporates paragraphs pertaining to damages hereinabove, and numbered 145-148, as if set forth fully at this point, as said damages apply to this Cause of Action.  Punitive damages are not requested as against YOLO or COUNTY, only due to the inability under the law to obtain such damages against public entities.

**SECOND CAUSE OF ACTION**
**VIOLATION 4TH AMENDMENT – SEIZURE**
(Joslynn v. Yenne, Christen, Mez, Lamb, Kloh, Marshall, Johnson)

154. JOSLYNN re-alleges and incorporates paragraphs 1-144, inclusive, as though fully set forth at this point, as they relate to a claim for relief for a violation of her rights to be free from an unlawful seizure of her person under the 4th Amendment to the United States Constitution, as occurred on July 19th, 2014, when she was seized by YOLO employees YENNE, MEZ, and CHRISTINE, placed in the back of a police vehicle, and made to wait for hours separated from her child awaiting the COUNTY employees (Does ##) to come and take her child

155. This Cause of Action is made against the following individually named Defendants, YENNE, CHRISTINE, MEZ, LAMB, KLOH, MARSHALL, and JOHNSON.

156. This Cause of Action is also made against YOLO and COUNTY based on their policies,

37

practices, customs, and procedures - particularly as to the use/misuse of the Missing Persons Reporting system - constituting a moving force behind the removal of Z.H. by way of including a "take into protective custody" instruction placed in a Missing Persons Report, and/or, lack of training on who constitutes a Missing Person, or the limits of law enforcement action based on such instructions within a Missing Person Report.

157. JOSLYNN alleges each individually named Defendant was an integral participant in the events, circumstances, and decisions that led to the unlawful seizure of JOSLYNN.

158. JOSLYNN hereby incorporates paragraphs pertaining to damages hereinabove, and numbered 145-148, as if set forth fully at this point, as said damages apply to this Cause of Action.  Punitive damages are not requested as against YOLO or COUNTY, only due to the inability under the law to obtain such damages against public entities.

## THIRD CAUSE OF ACTION
## VIOLATION 4TH AMENDMENT – ENTRY, SEARCH & SEIZURE
### (Joslynn, Desirae v. Doe Sheriffs, KLOH, RAUZY)

159. Plaintiffs re-allege and incorporate paragraphs 1-144, inclusive, as though fully set forth at this point, as they relate to a claim for relief for a violation of their rights to be free from unlawful entry and search of their home under the 4th Amendment to the United States Constitution, as occurred on July 13th, 2014.

160. Plaintiffs are unaware of the identities of the COUNTY sheriffs who entered and searched the home ("Doe Sheriffs"), and will seek leave to amend this Complaint to name those individuals when their true identity is ascertained.  However this Cause of Action is against those deputy sheriffs, KLOH and RAUZY.

//

Complaint
Hammers v. County of Sacramento, et al.
Case No.

161. Additionally, this Cause of Action specifically includes the allegation that the actions of the Sheriffs, KLOH, and RAUZY, were the result of a conspiracy to violate the 4th Amendment rights of Plaintiffs by creating a scenario whereby Sheriffs would accompany RAUZY to the home under the guise of a "welfare check," and then enter the home for the true purpose of ascertaining if JOSLYNN's mother Cynthia was in the home and arresting her.

162. PLAINTIFFS allege each individually named Defendant was an integral participant in the events, circumstances, and decisions that led to the unlawful entry and search of PLAINTIFFS' home on July 13th, 2014.

163. Plaintiffs hereby incorporate paragraphs pertaining to damages hereinabove, and numbered 145-148, excluding any damage claim of DESIRAE related to placement on any child abuse database, but otherwise as if set forth fully at this point, as said damages apply to this Cause of Action.  Punitive damages are not requested as against COUNTY, only due to the inability under the law to obtain such damages against public entities.

## FOURTH CAUSE OF ACTION
## VIOLATION 14TH AMENDMENT – FALSE EVIDENCE / DUE PROCESS
### (Joslynn v. LAMB, POREMBSKI)

164. JOSLYNN re-alleges and incorporates paragraphs 1-144, inclusive, as though fully set forth at this point, as they relate to a claim for relief for a violation of her rights of familial association and due process under the 14th Amendments to the United States Constitution, with regard to use of false and fabricated evidence in the juvenile dependency proceedings that followed the removal of Z.H. from JOSLYNN's care on July 19th, 2014, as same was used in the initial Detention Report and Petition in the manner an details described

39

Complaint
Hammers v. County of Sacramento, et al.
Case No.

hereinabove.

165. This Cause of Action is made against the following individually named Defendants, LAMB and POREMBSKI.

166. JOSLYNN hereby incorporates paragraphs pertaining to damages hereinabove, and numbered 145-148, as if set forth fully at this point, as said damages apply to this Cause of Action. Punitive damages are not requested as against COUNTY, only due to the inability under the law to obtain such damages against public entities.

## FIFTH CAUSE OF ACTION
### VIOLATION 14TH AMENDMENT – MEDICAL W/O NOTICE OR ATTEND
(Joslynn v. Doe Social Worker)

167. JOSLYNN re-alleges and incorporates paragraphs 1-144, inclusive, as though fully set forth at this point, as they relate to a claim for relief for a violation of her rights of familial association under the 14th Amendment to the United States Constitution, with regard to the repeated submission of Z.H. for medical appointments, including yet unknown evaluations and treatments, without having provided notice and an opportunity to object, or an opportunity for JOSLYNN to attend such appointments, while Z.H. was in the care, custody and control of COUNTY.

168. This Cause of Action is against yet unknown Doe COUNTY social workers and/or other COUNTY employees whose identity is yet unknown. JOSLYNN will seek leave to amend this Complaint when the true identities of the individuals involved are ascertained.

169. The COUNTY is also a named Defendant for purposes of this Cause of Action, as the repeated submission of children for medical appointments and evaluation without having provided the parent(s) with notice and an opportunity to object, or an opportunity to attend such appointments, while a child is in the care, custody and control of COUNTY, is a result of

40

the policies, practices, customs or procedures of COUNTY, and same are the moving force behind the repeated Constitutional violations of this nature.

170. JOSLYNN hereby incorporates paragraphs pertaining to damages hereinabove, and numbered 145-148, as if set forth fully at this point, as said damages apply to this Cause of Action.

### SIXTH CAUSE OF ACTION
### VIOLATION OF 1ST & 4th AMENDMENT - RIGHT OF PRIVACY
(Joslynn v. Lamb)

171. JOSLYNN re-alleges and incorporates paragraphs 1-144, inclusive, as though fully set forth at this point, as they relate to a claim for relief for a violation of her rights of privacy under the 1st Amendment, and rights against unreasonable search under the 4th Amendment to the United States Constitution, with regard to the requirement that she provided a urine sample for drug screening as alleged hereinabove.

172.   This Cause of Action is against LAMB, who obtained "consent" to such testing only pursuant to duress and coercion arising from the seizure of JOSLYNN's child Z.H. and the implication conveyed to JOSLYNN that her cooperation in submitting such sample, and submitting subsequent samples – LAMB told JOSLYNN she would be put on random urinalysis drug screenings – would assist in having her child returned.

173. This Cause of Action is against COUNTY as well, for COUNTY maintained a policy, practice, custom or procedure of coercing parents into urinalysis drug screenings as a condition of the return of their children.

174. JOSLYNN hereby incorporates paragraphs pertaining to damages hereinabove, and numbered 145-148, as if set forth fully at this point, as said damages apply to this Cause of Action.

41

## SEVENTH CAUSE OF ACTION
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
(Joslynn v. Yenne, Christen, Mez, Lamb, Kloh, Marshall, Johnson, Porembski, County Doe Defendants)

175. JOSLYNN re-alleges and incorporates paragraphs 1-144, inclusive, as though fully set forth at this point as they relate to a claim for relief for the intentional infliction of emotional distress pursuant to California law.

176. JOSLYNN brings this Cause of Action against individually named YOLO Defendants YENNE, CHRISTEN, and MEZ and individually named COUNTY Defendants LAMB, KLOH, MARSHALL, JOHNSON, and unknown Doe Defendants for their conduct related to the unlawful warrantless removal of Z.H. from the care, custody, and control of JOSLYNN, and the unlawful seizure of JOSLYNN when she was placed in the back of the police vehicle for hours, both of which occurred on July 19, 2014 and are described above.

177. JOSLYNN brings this Cause of Action against individually named COUNTY Defendants LAMB and POREMBSKI for their conduct related to the false and fabricated evidence in juvenile dependency proceedings that followed the removal of Z.H. from JOSYLNN's care on July 19, 2014, as same was used in the initial Detention Report and Petitions in the manner and details described above.

178. JOSLYNN brings this Cause of Action against currently unidentified COUNTY Doe social worker(s) for conduct related to the repeated submission of Z.H. for medical appointments, including yet unknown evaluations and treatments, without having provided notice and an opportunity to object, or an opportunity for JOSLYNN to attend such appointments while Z.H. was in the care, custody, and control of COUNTY, as described above.

//

179. JOSLYNN brings this Cause of Action against individually named COUNTY Defendant LAMB for her conduct related to the requirement that JOSLYNN provide a urine sample for drug screening and the unlawful manner in which LAMB obtained JOSLYNN's "consent," as alleged hereinabove.

180. The conduct set forth hereinabove which was perpetrated against JOSLYNN was extreme and outrageous.  In engaging in such conduct, YENNE, CHRISTEN, MEZ, LAMB, KLOH, MARSHALL, JOHNSON, POREMBSKI, and County Doe Defendants intentionally caused or recklessly disregarded the probability of causing JOSLYNN emotional distress. JOSLYNN suffered severe and/or extreme emotional distress as a result of the YENNE, CHRISTEN, MEZ, LAMB, KLOH, MARSHALL, JOHNSON, POREMBSKI, Doe Social Worker, and County Doe Defendants' conduct.  YENNE, CHRISTEN, MEZ, LAMB, KLOH, MARSHALL, JOHNSON, POREMBSKI, and County Doe Defendants' extreme and outrageous conduct was the actual and proximate cause of Plaintiff's emotional distress.

181. JOSLYNN hereby incorporates paragraphs pertaining to damages hereinabove, and numbered 145-148, as if set forth fully at this point, as said damages apply to this Cause of Action.

**PRAYER FOR RELIEF**,

WHEREFORE, Plaintiffs respectfully request that this Court:

1.) Award Plaintiffs general, special and compensatory damages in an amount to be proven at trial.

2.) Award Plaintiffs punitive damages against individually named Defendants, and each of them, for her extreme and outrageous conduct in complete disregard for the rights of the Plaintiffs, for those Causes of Action in which punitive damages are recoverable;

3.) Award Plaintiffs statutory damages and/or attorneys' fees against all Defendants as allowed by 42 U.S.C. §1988.

4.) Grant Plaintiffs such other and further relief as the Court may deem just and proper.

Dated: June 17, 2015

_R R Powell_
ROBERT R. POWELL, ESQ.
Attorney for Plaintiffs

44

Complaint
Hammers v. County of Sacramento, et al.
Case No.

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

FILED
Superior Court Of California,
Sacramento

06/26/2015

tsmith

By_____, Deputy

Case Number:
**34-2015-00181034**

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
COUNTY OF SACRAMENTO, JENNIFER RAUZY, SEIHDI KLOH, CYNTHIA MARSHALL,
JENNIFER LAMB, KELSEY JOHNSON, MARGO POREMBSKI, COUNTY OF YOLO, DAVID
YENNE, BONNIE CHRISTEN, RYAN MEZ, and DOES 1-15 inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
JOSLYNN HAMMERS and DESIRAE HAMMERS

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>SUPERIOR COURT OF CALIFORNIA, COUNTY OF SACRAMENTO<br>Gordon D. Schaber Courthouse<br>720 9th Street, Sacramento, CA 95814 | CASE NUMBER:<br>*(Número del Caso):* |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Robert R. Powell    (Bar # 159747)                              Fax No.: (408) 553-0203
LAW OFFICE OF ROBERT R. POWELL                      Phone No.: (408) 553-0200
925 W Hedding Street, San Jose, CA 95126

DATE: JUN 26 2015          Clerk, by _____, Deputy
*(Fecha)*                        *(Secretario)*                        *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. [X] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*

3. [ ] on behalf of *(specify):*

   under: [ ] CCP 416.10 (corporation)          [ ] CCP 416.60 (minor)
          [ ] CCP 416.20 (defunct corporation)  [ ] CCP 416.70 (conservatee)
          [ ] CCP 416.40 (association or partnership)  [ ] CCP 416.90 (authorized person)
          [ ] other *(specify):*
4. [ ] by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov
*LexisNexis® Automated California Judicial Council Forms*

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|

Robert R. Powell   (Bar #159747)
LAW OFFICE OF ROBERT R. POWELL
925 West Hedding Street
San Jose, California 95126
TELEPHONE NO: (408) 553-0200       FAX NO: (408) 553-0203
ATTORNEY FOR *(Name):* Joslynn Hammers, et al., Plaintiffs

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SACRAMENTO
STREET ADDRESS: 720 9th Street
MAILING ADDRESS: 720 9th Street
CITY AND ZIP CODE: Sacramento 95814
BRANCH NAME: Civil Division

FILED
Superior Court Of California,
Sacramento
06/26/2015
tsmith
By _____ , Deputy
Case Number:
34-2015-00181034

CASE NAME:
Hammers et al., v. County of Sacramento, et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| [X] Unlimited (Amount demanded exceeds $25,000) | [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter  [ ] Joinder Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | | |
| | | | | JUDGE: |
| | | | | DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[X] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [ ] is [X] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [X] monetary   b. [ ] nonmonetary; declaratory or injunctive relief   c. [X] punitive
4. Number of causes of action *(specify):* SEVEN (7)
5. This case [ ] is [X] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: June 17, 2015

Robert R. Powell
*(TYPE OR PRINT NAME)*                                     ► *(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)*

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on **all** other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
*www.courtinfo.ca.gov*
*LexisNexis® Automated California Judicial Council Forms*

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
   Damage/Wrongful Death
Uninsured Motorist (46) *(if the
   case involves an uninsured
   motorist claim subject to
   arbitration, check this item
   instead of Auto)*

**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
Asbestos (04)
   Asbestos Property Damage
   Asbestos Personal Injury/
      Wrongful Death
Product Liability *(not asbestos or
   toxic/environmental)* (24)
Medical Malpractice (45)
   Medical Malpractice–
      Physicians & Surgeons
   Other Professional Health Care
      Malpractice
Other PI/PD/WD (23)
   Premises Liability (e.g., slip
      and fall)
   Intentional Bodily Injury/PD/WD
      (e.g., assault, vandalism)
   Intentional Infliction of
      Emotional Distress
   Negligent Infliction of
      Emotional Distress
   Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
   Practice (07)
Civil Rights (e.g., discrimination,
   false arrest) *(not civil
   harassment)* (08)
Defamation (e.g., slander, libel)
   (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
   Legal Malpractice
   Other Professional Malpractice
      *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
   Breach of Rental/Lease
      Contract *(not unlawful detainer
         or wrongful eviction)*
   Contract/Warranty Breach–Seller
      Plaintiff *(not fraud or negligence)*
   Negligent Breach of Contract/
      Warranty
   Other Breach of Contract/Warranty
Collections (e.g., money owed, open
   book accounts) (09)
   Collection Case–Seller Plaintiff
   Other Promissory Note/Collections
      Case
Insurance Coverage *(not provisionally
   complex)* (18)
   Auto Subrogation
   Other Coverage
Other Contract (37)
   Contractual Fraud
   Other Contract Dispute
**Real Property**
Eminent Domain/Inverse
   Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
   Writ of Possession of Real Property
   Mortgage Foreclosure
   Quiet Title
   Other Real Property *(not eminent
      domain, landlord/tenant, or
      foreclosure)*
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal
   drugs, check this item; otherwise,
   report as Commercial or Residential)*
**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
   Writ–Administrative Mandamus
   Writ–Mandamus on Limited Court
      Case Matter
   Writ–Other Limited Court Case
      Review
Other Judicial Review (39)
   Review of Health Officer Order
   Notice of Appeal–Labor
      Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
   *(arising from provisionally complex
   case type listed above)* (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
   Abstract of Judgment (Out of
      County)
   Confession of Judgment *(non-
      domestic relations)*
   Sister State Judgment
   Administrative Agency Award
      *(not unpaid taxes)*
   Petition/Certification of Entry of
      Judgment on Unpaid Taxes
   Other Enforcement of Judgment
      Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified
   above)* (42)
   Declaratory Relief Only
   Injunctive Relief Only *(non-
      harassment)*
   Mechanics Lien
   Other Commercial Complaint
      Case *(non-tort/non-complex)*
   Other Civil Complaint
      *(non-tort/non-complex)*
**Miscellaneous Civil Petition**
Partnership and Corporate
   Governance (21)
Other Petition *(not specified
   above)* (43)
   Civil Harassment
   Workplace Violence
   Elder/Dependent Adult
      Abuse
   Election Contest
   Petition for Name Change
   Petition for Relief From Late
      Claim
   Other Civil Petition

**CIVIL CASE COVER SHEET**

*LexisNexis® Automated California Judicial Council Forms*

| | |
|---|---|
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF SACRAMENTO** | **FOR COURT USE ONLY** |
| STREET ADDRESS: 720 Ninth STREET | |
| MAILING ADDRESS: 720 Ninth STREET | |
| CITY AND ZIPCODE: Sacramento, CA 95814-1311 | |
| BRANCH NAME: Gordon D Schaber Courthouse | |
| PHONE NUMBER: (916) 874-5522 | |

| | |
|---|---|
| **SHORT TITLE:**      Hammers vs. County of Sacramento | |

| | |
|---|---|
| **NOTICE OF CASE MANAGEMENT CONFERENCE**<br>**AND ORDER TO APPEAR** | CASE NUMBER:<br>34-2015-00181034-CU-CR-GDS |

## Hearing Date

The above entitled action has been set for a case management conference at 08:30 AM on 06/23/2016 in Department  36  in accordance with California Rules of Court 212.  You must be familiar with the case and fully prepared to participate effectively in the case management conference.

## Case Management Statement

All parties must file and serve a case management statement at least 15 calendar days before the case management conference. Parties are encouraged to file a single joint case management statement.

## Minimum Requirements

Prior to the filing of the case management statement, the parties should have done the following:
   -Served all parties named in the complaint within 60 days after the summons has been issued
   -Ensured that all defendants and cross-defendants have answered, been dismissed, or had their defaults entered
   -Met and conferred with all parties as required by CRC 212 (f) to discuss and resolve issues set forth therein.

## Tentative Ruling

Following its review of the case management statement(s), the court may determine that a case management conference is not necessary.
To determine whether an appearance is required, the parties must check the court's tentative rulings after 2:00 p.m. on the Court day before the Thursday calendar by accessing the court's internet website at www.saccourt.ca.gov

## Case Management Orders

At the case management conference, the court will consider whether the case should be ordered to judicial arbitration or referred to other forms of Alternative Dispute Resolution. Whether or not a case management conference is held, the court will issue a case management order shortly after the scheduled conference date.

## Service of Case Management Notice

Unless otherwise ordered by the court, plaintiff shall serve a copy of this notice on any party to the complaint appearing after the court issued this notice. The cross-complainant shall have the same obligation with respect to the cross-complaint.

## Certification Filed in Lieu of Case Management Statement

If parties in the action file a certification on a form provided by the court at least 15 calendar days prior to the date of the case management conference that the case is short cause (five hours or less of trial time), that the pleading stage is complete and that the case will be ready for trial within 60 days, the case will be exempted from any further case management requirements and will be set for trial within 60-120 days. The certification shall be filed in lieu of a case management statement.

---

**NOTICE OF CASE MANAGEMENT CONFERENCE AND ORDER TO APPEAR**

**Compliance**
Failure to comply with this notice or to appear at the case management conference may result in the imposition of sanctions (including dismissal of the case, striking of the answer, or payment of money).


**Continuances**
Case management conference will not be continued except on a showing of good cause. If your case management conference is continued on motion or by the court on its own motion all parties shall file and serve a new case management statement at least 15 calendar days before the continued case management conference.


Dated: 06/29/2015

Gerrit W. Wood, Judge of the Superior Court

---

**NOTICE OF CASE MANAGEMENT CONFERENCE AND ORDER TO APPEAR**

CIV-110

| | |
|---|---|
| **ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address):*<br>Robert R. Powell (Bar # 159747)<br>Law Office of Robert R. Powell<br>925 West Hedding Street, San Jose, CA 95126<br>TELEPHONE NO.: (408) 553-0200  FAX NO. *(Optional):* (408) 553-0203<br>E-MAIL ADDRESS *(Optional):* rpowell@rrpassociates.com<br>ATTORNEY FOR *(Name):* Joslynn Hammers and Desirae Hammers, Plaintiffs | **FOR COURT USE ONLY**<br><br>**FILED/ENDORSED**<br><br>JUL 27 2015<br><br>By: _____<br>D. JOHNSON<br>DEPUTY CLERK |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** SACRAMENTO
STREET ADDRESS: 720 Ninth Street
MAILING ADDRESS: 720 Ninth Street
CITY AND ZIP CODE: Sacramento 95814
BRANCH NAME: Gordon D. Schaber Courthouse

PLAINTIFF/PETITIONER: Joslynn Hammers, et al.

DEFENDANT/RESPONDENT: County of Sacramento, et al.

| | |
|---|---|
| **REQUEST FOR DISMISSAL** | CASE NUMBER:<br>34-2015-00181034 |

A conformed copy will not be returned by the clerk unless a method of return is provided with the document.

This form may not be used for dismissal of a derivative action or a class action or of any party or cause of action in a class action. (Cal. Rules of Court, rules 3.760 and 3.770.)

1. TO THE CLERK: Please **dismiss** this action as follows:
   a. (1) ☐ With prejudice  (2) ☒ Without prejudice
   b. (1) ☐ Complaint  (2) ☐ Petition
   (3) ☐ Cross-complaint filed by *(name):*  on *(date):*
   (4) ☐ Cross-complaint filed by *(name):*  on *(date):*
   (5) ☐ Entire action of all parties and all causes of action
   (6) ☒ Other *(specify):** All causes of action only as to Defendant Bonnie Christen

2. *(Complete in all cases except family law cases.)*
   The court ☐ did ☒ did not waive court fees and costs for a party in this case. *(This information may be obtained from the clerk. If court fees and costs were waived, the declaration on the back of this form must be completed).*

Date: July 22, 2015

Robert R. Powell                              ►  *[signature]*
(TYPE OR PRINT NAME OF ☒ ATTORNEY ☐ PARTY WITHOUT ATTORNEY)    (SIGNATURE)

*If dismissal requested is of specified parties only or specified causes of action only, or of specified cross-complaints only, so state and identify the parties, causes of action, or cross-complaints to be dismissed.

Attorney or party without attorney for:
☒ Plaintiff/Petitioner          ☐ Defendant/Respondent
☐ Cross-Complainant

3. **TO THE CLERK:** Consent to the above dismissal is hereby given.**
   Date:

_____                    ►
(TYPE OR PRINT NAME OF ☐ ATTORNEY ☐ PARTY WITHOUT ATTORNEY)       (SIGNATURE)

** If a cross-complaint – or Response (Family Law) seeking affirmative relief – is on file, the attorney for cross-complainant (respondent) must sign this consent if required by Code of Civil Procedure section 581 (i) or (j).

Attorney or party without attorney for:
☐ Plaintiff/Petitioner          ☐ Defendant/Respondent
☐ Cross-Complainant

---

*(To be completed by clerk)*

4. ☑ Dismissal entered as requested on *(date):* JUL 27 2015

5. ☐ Dismissal entered on *(date):*                    as to only *(name):*

6. ☐ Dismissal **not entered** as requested for the following reasons *(specify):*

7. a. ☐ Attorney or party without attorney notified on *(date):*
   b. ☐ Attorney or party without attorney not notified. Filing party failed to provide
      ☐ a copy to be conformed  ☐ means to return conformed copy

Date:                                          Clerk, by _____ , Deputy

JUL 27 2015

Form Adopted for Mandatory Use
Judicial Council of California
CIV-110 [Rev. Jan. 1, 2013]

**REQUEST FOR DISMISSAL**

Code of Civil Procedure, § 581 et seq.;
Gov. Code, § 68637(c); Cal. Rules of Court, rule 3.1390
*www.courts.ca.gov*

*LexisNexis® Automated California Judicial Council Forms*

CIV-110

| PLAINTIFF/PETITIONER: Joslynn Hammers, et al. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: County of Sacramento, et al. | 34-2015-00181034 |

## COURT'S RECOVERY OF WAIVED COURT FEES AND COSTS

If a party whose court fees and costs were initially waived has recovered or will recover $10,000 or more in value by way of settlement, compromise, arbitration award, mediation settlement, or other means, the court has a statutory lien on that recovery. The court may refuse to dismiss the case until the lien is satisfied. (Gov. Code, § 68637.)

## Declaration Concerning Waived Court Fees

1. The court waived court fees and costs in this action for *(name):*

2. The person named in item 1 is *(check one below):*
   a. ☐ not recovering anything of value by this action.
   b. ☐ recovering less than $10,000 in value by this action.
   c. ☐ recovering $10,000 or more in value by this action. *(If item 2c is checked, item 3 must be completed.)*

3. ☐ All court fees and court costs that were waived in this action have been paid to the court *(check one):* ☐ Yes ☐ No

I declare under penalty of perjury under the laws of the State of California that the information above is true and correct.

Date: _____

_____          ▶          _____
(TYPE OR PRINT NAME OF ☐ ATTORNEY ☐ PARTY MAKING DECLARATION)                    (SIGNATURE)

1  **P O R T E R | S C O T T**
2  A PROFESSIONAL CORPORATION
   Terence J. Cassidy, SBN 99180
3  John R. Whitefleet, SBN 213301
   350 University Ave., Suite 200
4  Sacramento, California 95825
   TEL: 916.929.1481
5  FAX: 916.927.3706

6  Attorneys for Defendants COUNTY OF SACRAMENTO, JENNIFER RAUZY, SEIHDI KLOH,
7  CYNTHIA MARSHALL, JENNIFER LAMB, KELSEY JOHNSON, and MARGO POREMBSKI

8  *Exempt From Filing Fees Pursuant to Government Code § 6103*

9  **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

10  **COUNTY OF SACRAMENTO**

11  JOSLYNN HAMMERS and DESIRAE          CASE NO. 34-2015-00181034
    HAMMERS,
12
13             Plaintiffs,              **DEFENDANTS COUNTY OF**
                                        **SACRAMENTO, JENNIFER RAUZY,**
14  v.                                  **SEIHDI KLOH, CYNTHIA MARSHALL,**
                                        **JENNIFER LAMB, KELSEY JOHNSON,**
15  COUNTY OF SACRAMENTO, JENNIFER      **AND MARGO POREMBSKI'S ANSWER**
16  RAUZY, SEIHDI KLOH, CYNTHIA         **TO COMPLAINT**
    MARSHALL, JENNIFER LAMB, KELSEY
17  JOHNSON, MARGO POREMBSKI,
    COUNTY OF YOLO, DAVID YENNE,
18  BONNIE CHRISTEN, RYAN MEZ, and
19  DOES 1-15 inclusive,

20             Defendants.
21  _____/

22        COMES NOW Defendants COUNTY OF SACRAMENTO, JENNIFER RAUZY, SEIHDI

23  KLOH, CYNTHIA MARSHALL, JENNIFER LAMB, KELSEY JOHNSON, and MARGO

24  POREMBSKI answering the Complaint filed by Plaintiffs JOSLYNN HAMMERS and DESIRAE

25  HAMMERS as follows:

26  ///

27  ///

28  ///

{01444775.DOCX}                          1
**DEFENDANTS COUNTY OF SACRAMENTO, JENNIFER RAUZY, SEIHDI KLOH, CYNTHIA MARSHALL,**
**JENNIFER LAMB, KELSEY JOHNSON, AND MARGO POREMBSKI'S ANSWER TO COMPLAINT**

PORTER | SCOTT
350 University Ave., Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

PORTER | SCOTT
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706

**GENERAL DENIAL**

These answering Defendants deny generally and specifically each and every allegation of said Complaint and each and every alleged Cause of Action therein and further deny that Plaintiffs were or will be damaged in any sum or sums whatsoever.

**AFFIRMATIVE DEFENSES**

**FIRST AFFIRMATIVE DEFENSE**

The Complaint, in its entirety and through each separately stated cause of action, fails to state facts sufficient to constitute a viable cause of action against these answering Defendants.

**SECOND AFFIRMATIVE DEFENSE**

At all times mentioned in the Complaint, Defendants were acting in good faith and entitled to qualified immunity.

**THIRD AFFIRMATIVE DEFENSE**

Each of Plaintiffs' claims are barred on the grounds of quasi-prosecutorial and/or quasi-judicial absolute immunity.

**FOURTH AFFIRMATIVE DEFENSE**

Each of Plaintiffs' claims are barred on the grounds that at all times mentioned in the Complaint, Defendants complied with the provisions of California Welfare and Institutions Code § 300 *et seq.*, including but not limited to § 306.

**FIFTH AFFIRMATIVE DEFENSE**

Each of Plaintiffs' claims are barred on the grounds that, at all times mentioned in the Complaint, there was reasonable or probable cause to believe there existed exigent, emergent and/or community care circumstances justifying the actions of Defendants.

**SIXTH AFFIRMATIVE DEFENSE**

Each of Plaintiffs' claims are barred under the doctrine set forth in <u>McMillian v. Monroe County</u> (1997) 117 S.Ct. 1734, in that the conduct complained of occurred, if at all, on behalf of the State and not the County.

///

///

{01444775.DOCX}                                          2

**DEFENDANTS COUNTY OF SACRAMENTO, JENNIFER RAUZY, SEIHDI KLOH, CYNTHIA MARSHALL, JENNIFER LAMB, KELSEY JOHNSON, AND MARGO POREMBSKI'S ANSWER TO COMPLAINT**

PORTER | SCOTT
350 University Ave., Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

1

### SEVENTH AFFIRMATIVE DEFENSE

Each act or omission alleged in the Complaint falls within the immunities and defenses described in California Government Code § 820.2.

### EIGTH AFFIRMATIVE DEFENSE

Each act or omission alleged in the Complaint falls within the immunities and defenses described in California Government Code § 820.4.

### NINTH AFFIRMATIVE DEFENSE

Each act or omission alleged in the Complaint falls within the immunities and defenses described in California Government Code § 821.6.

### TENTH AFFIRMATIVE DEFENSE

Each of Plaintiffs' claims are barred by the immunities set forth in Penal Code § 11172.

### ELEVENTH AFFIRMATIVE DEFENSE

Each act or omission alleged in the Complaint falls within the immunities and defenses described in California Government Code §§ 815, *et seq.* and 900, *et seq.*

### TWELFTH AFFIRMATIVE DEFENSE

Each of Plaintiffs' claims are barred by the doctrines of express or implied consent.

### THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiffs are barred from recovery by his or her own careless, negligent, and willful conduct or by reason of his/her legal responsibility for similar such conduct of others, including agents, partners, or joint venturers, all of which proximately caused any damage claimed in this action.

### FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims for punitive damages are barred by provisions of Government Code §818 and <u>Newport v. Fact Concert, Inc</u>. (1981) 453 U.S. 247.

### FIFTEENTH AFFIRMATIVE DEFENSE

All parties hereto, save and except answering Defendants, are proportionately responsible for their own share of fault pursuant to Civil Code § 1431, *et seq.*

///

{01444775.DOCX}                                          3

**DEFENDANTS COUNTY OF SACRAMENTO, JENNIFER RAUZY, SEIHDI KLOH, CYNTHIA MARSHALL, JENNIFER LAMB, KELSEY JOHNSON, AND MARGO POREMBSKI'S ANSWER TO COMPLAINT**

1               **SIXTEENTH AFFIRMATIVE DEFENSE**

2         Plaintiffs failed to exercise reasonable diligence so as to mitigate the damages, if any, and

3 said conduct was the sole and proximate cause of said injuries.

4         WHEREFORE, Defendants COUNTY OF SACRAMENTO, JENNIFER RAUZY,

5 SEIHDI KLOH, CYNTHIA MARSHALL, JENNIFER LAMB, KELSEY JOHNSON, and

6 MARGO POREMBSKI pray for judgment as follows:

7         1.      That Plaintiff's action is dismissed;

8         2.      That Plaintiffs take nothing by way of their Complaint;

9         3.      That Defendants be awarded their costs of suit, including attorney fees; and,

10         4.      For such other relief as the Court deems proper.

11

12 Dated: August 18, 2015                PORTER SCOTT
                                         A PROFESSIONAL CORPORATION

13

14

15                                  By

16                                      Terence J. Cassidy
                                     John R. Whitefleet

17                                      Attorneys for Defendants
                                     COUNTY OF SACRAMENTO, JENNIFER

18                                      RAUZY, SEIHDI KLOH, CYNTHIA
                                     MARSHALL, JENNIFER LAMB, KELSEY

19                                      JOHNSON, and MARGO POREMBSKI

20

21

22

23

24

25

26

27

28

PORTER | SCOTT
350 University Ave., Suite 200
Sacramento, CA  95825
TEL: 916.929.1481
FAX: 916.927.3706

{01444775.DOCX}                     4

**DEFENDANTS COUNTY OF SACRAMENTO, JENNIFER RAUZY, SEIHDI KLOH, CYNTHIA MARSHALL, JENNIFER LAMB, KELSEY JOHNSON, AND MARGO POREMBSKI'S ANSWER TO COMPLAINT**

| | |
|---|---|
| **Case Name:** | **Hammers vs. County of Sacramento, et al.** |
| **Court/Case No.:** | **Sacramento County Superior Court / 34-2015-00181034** |

## DECLARATION OF SERVICE

I am a citizen of the United States and employed in Sacramento County, California. I am over the age of eighteen years and not a party to the within above-entitled action. My business address is 350 University Avenue, Suite 200, Sacramento, California.

On the date indicated below, I caused to be served the following:

**DEFENDANTS COUNTY OF SACRAMENTO, JENNIFER RAUZY, SEIHDI KLOH, CYNTHIA MARSHALL, JENNIFER LAMB, KELSEY JOHNSON, AND MARGO POREMBSKI'S ANSWER TO COMPLAINT**

| | |
|---|---|
| ☒ | **BY MAIL:** I placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this business' practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. |
| | **BY OVERNIGHT DELIVERY:** I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the person(s) listed below. I placed the envelope or package for collection and overnight delivery at my office or a regularly utilized drop box of the overnight delivery carrier. |
| | **BY FAX TRANSMISSION:** Based on an agreement of the parties to accept service by fax transmission, I faxed the documents to the persons at the fax numbers listed below. No error was reported by the fax machine that I used. A copy of the record of the fax transmission, which I printed out, is attached. |
| | **BY ELECTRONIC SERVICE:** I caused the documents to be sent to the persons at the electronic notification address listed below. |

**Addressed as follows:**

| | |
|---|---|
| Robert R. Powell, SBN 159747<br>Dennis R. Ingols, SBN 236458<br>Brett O. Terry, SBN 270694<br>LAW OFFICE OF ROBERT R. POWELL<br>925 West Hedding Street<br>San Jose, CA 95126 | Joseph B. Weinberger, SBN 136798<br>WEINBERGER LAW FIRM<br>1839 Iron Point Road, Ste. 180<br>Folsom, CA 95630 |
| Eric May, SBN 245770<br>County of Yolo<br>625 Court Street, Room 201<br>Woodland, CA 95695 | |

I declare under penalty of perjury that the foregoing is true and correct. Executed at Sacramento, California on August 19, 2015.

_____
Andrea A. Rios

{01444775.DOCX}

**DECLARATION OF SERVICE**

1  LONGYEAR, O'DEA & LAVRA, LLP
   John A. Lavra, CSB No.: 114533
2  Amanda L. McDermott, CSB No.: 253651
   3620 American River Drive, Suite 230
3  Sacramento, CA 95864
   Phone: 916-974-8500
4  Facsimile: 916-974-8510

5

6  Attorneys for COUNTY OF YOLO,
   DAVID YENNE, and
   RYAN MEZ
7

8

9              **SUPERIOR COURT OF CALIFORNIA**

10                **COUNTY OF SACRAMENTO**

11  **JOSLYNN HAMMERS and DESIRAE**       )  **Case No.: 34-2015-00181034**
    **HAMMERS,**                          )
12                                        )  **ANSWER TO COMPLAINT BY COUNTY**
              **Plaintiffs,**             )  **OF YOLO, DAVID YENNE, AND RYAN**
13                                        )  **MEZ**
          v.                              )
14                                        )
    **COUNTY OF SACRAMENTO,**             )
15  **JENNIFER RAUZY, SEIHDI KLOH,**      )  **Complaint Filed:  6/26/15**
    **CYNTHIA MARSHALL, JENNIFER**        )  **Trial:   None Set**
16  **LAMB, KELSEY JOHNSON, MARGO**       )
    **POREMBSKI, COUNTY OF YOLO,**        )
17  **DAVID YENNE, BONNIE CHRISTEN,**     )
    **RYAN MEZ, and DOES 1-15 inclusive,** )  **[Filing fee exemption for Government**
18                                        )  **Entity pursuant to Government Code §**
              **Defendants.**             )  **6103]**
19

20        COMES NOW Defendants, COUNTY OF YOLO, DAVID YENNE, and RYAN MEZ,

21  in answer to the unverified Complaint filed by Plaintiffs, denies and alleges as follows:

22        Answering the allegations contained in said complaint, these defendants deny each and

23  every, all and singular, generally and specifically, the allegations of the Complaint and the whole

24  thereof, and specifically deny that plaintiffs have been injured or damaged in any sum or at all by

25  reason of any act or omission of these answering defendants.

26                **AFFIRMATIVE DEFENSES**

27        As separate and affirmative defenses, the answering Defendants allege as follows:

28  ///

    **ANSWER TO COMPLAINT BY COUNTY OF YOLO, DAVID YENNE, and RYAN MEZ**

                **Page 1**

### FIRST AFFIRMATIVE DEFENSE

Plaintiff's complaint, and each and every claim alleged herein, fails to state a claim against Defendants upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

That at all times alleged, Defendants acted in good faith and are entitled to qualified immunity.

### THIRD AFFIRMATIVE DEFENSE

Plaintiff's complaint does not rise to the level of a constitutional or statutory violation.

### FOURTH AFFIRMATIVE DEFENSE

Each of Plaintiffs' claims are barred on the grounds that, at all times mentioned in the Complaint, there was reasonable or probable cause to believe there existed exigent, emergent and/or community care circumstances justifying the actions of Defendants.

### FIFTH AFFIRMATIVE DEFENSE

Defendants have not deprived Plaintiff of any right, privilege, or immunity guaranteed by the Constitution or the laws of the United States.

### SIXTH AFFIRMATIVE DEFENSE

Defendants assert that its employees did not act with malicious intent to deprive any person of any constitutional right or to cause injury and therefore is not liable.

### SEVENTH AFFIRMATIVE DEFENSE

At said times and places, Defendants attempted to, and did, execute any and all mandatory duties with respect to Plaintiffs in good faith and without malice.

### EIGHTH AFFIRMATIVE DEFENSE

Defendants' conduct was protected by all applicable statutory and common law immunities, including, but not limited to, all absolute and qualified immunities.

### NINTH AFFIRMATIVE DEFENSE

Defendants assert that it is not liable to Plaintiff for any injury or damages, if there were any, caused by an exercise of discretion. The complaint is therefore barred by the doctrine of discretionary immunity as set forth in Government Code §§ 820.2 and 821.6.

**ANSWER TO COMPLAINT BY COUNTY OF YOLO, DAVID YENNE, and RYAN MEZ**

**TENTH AFFIRMATIVE DEFENSE**

Plaintiff's claims are barred by the applicable statute of limitations.

**ELEVENTH AFFIRMATIVE DEFENSE**

Defendants are immune to all state law claims pursuant to Government Code §§ 815.2, 818, 820.2, 820.25, 820.4, 820.8 and 821.6.

**TWELFTH AFFIRMATIVE DEFENSE**

Complaint fails to state a claim for violation of Plaintiff's civil rights, as Plaintiff's alleged deprivation of civil rights, if any occurred, was not without due process of law.

**THIRTEENTH AFFIRMATIVE DEFENSE**

Defendants assert that Plaintiffs' injuries were the result of the acts of third parties currently known or otherwise unknown to these answering Defendants.

**FOURTEENTH AFFIRMATIVE DEFENSE**

Defendants allege that said complaint is barred by the statute of limitations; to wit, the provisions of Code of Civil Procedures sections 312 through 365.

**FIFTEENTH AFFIRMATIVE DEFENSE**

Defendants assert that the other third persons were contributorily negligent, such negligence contributed to the injury, and Plaintiffs' recovery against this answering Defendant should therefore either be barred or reduced to the extent of such negligence.

**SIXTEENTH AFFIRMATIVE DEFENSE**

Defendants assert that the Plaintiffs' Complaint and each cause of action are uncertain.

**SEVENTEENTH AFFIRMATIVE DEFENSE**

Plaintiff's complaint is barred by failure to comply with the California Tort Claims Act, California Government Code §§ 910 through 915.4 and §§ 945.4 through 946.6

**EIGHTEENTH AFFIRMATIVE DEFENSE**

That Plaintiff's claims, or some of them, against the County of Yolo are barred pursuant to Government Code § 815.

///

///

**ANSWER TO COMPLAINT BY COUNTY OF YOLO, DAVID YENNE, and RYAN MEZ**

1

## NINETEENTH AFFIRMATIVE DEFENSE

2      Defendants are not liable, pursuant to California Government Code § 818, for any

3   exemplary or punitive damages.

4

## TWENTIETH AFFIRMATIVE DEFENSE

5      Defendant asserts that Plaintiffs failed to take reasonable steps to mitigate their injuries

6   and damages, if any there are. Any recovery by Plaintiffs should be reduced by those damages

7   Plaintiffs failed to adequately mitigate.

8

## TWENTY-FIRST AFFIRMATIVE DEFENSE

9      Each of Plaintiffs' claims are barred by the doctrines of express or implied consent.

10

## TWENTY-SECOND AFFIRMATIVE DEFENSE

11      Because the complaint is vague, ambiguous, in narrative form and in conclusionary

12   terms, Defendants cannot fully anticipate all affirmative defenses that may be applicable to this

13   matter. Accordingly, the right to assert additional affirmative defenses, if any, to the extent such

14   affirmative defenses are applicable, is hereby reserved.

15      **WHEREFORE**, these answering Defendants pray for judgment as against Plaintiffs as

16   follows:

17      1.    That Plaintiffs take nothing by way of their complaint and judgment be entered in

18            favor of Defendants on all claims;

19      2.    That Defendants be awarded costs of suit;

20      3.    That Defendants be awarded attorneys' fees pursuant to statute; and,

21      4.    For such other and further relief as the court may deem just and proper.

22   Dated: August 25, 2015          LONGYEAR, O'DEA & LAVRA, LLP

23

24                By:

25                     JOHN A. LAVRA
                           AMANDA L. MCDERMOTT

26                     Attorneys for Defendants County of Yolo, David
                           Yenne, and Ryan Mez

27

28

**ANSWER TO COMPLAINT BY COUNTY OF YOLO, DAVID YENNE, and RYAN MEZ**

**Page 4**

**PROOF OF SERVICE**

I am employed in the County of Sacramento.  I am over the age of eighteen years and not a party to the within above-entitled action. My business address is 3620 American River Dr. Ste. 230, Sacramento, CA 95864.

I am familiar with this office's practice whereby the mail is sealed, given the appropriate postage and placed in a designated mail collection area.  Each day's mail is collected and deposited in a United States mailbox after the close of each day's business.

On  August 25, 2015, I served the following:

**ANSWER TO COMPLAINT BY COUNTY OF YOLO, DAVID YENNE, BONNIE CHRISTEN, and RYAN MEZ**

<u>XX</u>    United States Mail - by placing a true copy of the above-described document(s) enclosed in a sealed envelope in the designated area for outgoing mail addressed as set forth below.

| **Attorney for Plaintiffs** | **Attorney for Defendants** |
| --- | --- |
| **Robert R. Powell**<br>**925 West Hedding Street**<br>**San Jose, CA 95126** | **County of Sacramento et al.**<br><br>**Terence J Cassidy**<br>**Ryan O'Conner**<br>**PORTER SCOTT**<br>**350 University Avenue, Suite 200**<br>**Sacramento, CA 95825** |

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on August 25, 2015, at Sacramento, California.

Employee of Longyear, O'Dea & Lavra, LLP

**ANSWER TO COMPLAINT BY COUNTY OF YOLO, DAVID YENNE, and RYAN MEZ**